**COLORADO MANUFACTURED HOUSING ASSOCIATION, Champion Enterprises, Inc., a Michigan corporation, d/b/a Champion Home Builders Company, and George C. Seeger, d/b/a Seeger Homes, Plaintiffs–Appellants,**

v.

**PUEBLO COUNTY, Pueblo County Board of Commissioners, Sollie S. Reso, Pueblo County Commissioner Chairman, in his official capacity, George D. Amaya, Pueblo County Commissioner, in his official capacity, James M. Brewer, Pueblo County Commissioner, in his official capacity, Pueblo County Department of Planning and Development, and Charles J. Finley, Director of the Pueblo County Department of Planning and Development, in his official capacity, Defendants–Appellees.**

No. 91CA2096.

Colorado Court of Appeals,
Div. I.

Feb. 11, 1993.

As Modified on Denial of Rehearing
March 11, 1993.

Certiorari Denied Aug. 30, 1993.

Frank & Finger, P.C., Thomas Frank, Hal B. Warren, Evergreen, Susemihl, Lohman, Kent, Carlson & McDermott, P.C., Stanley C. Kent, Colorado Springs, for plaintiffs-appellants.

Greengard Senter Goldfarb & Rice, Steven J. Dawes, Paul E. Collins, Denver, Raso and Sutterlin, P.C., Gary Raso, Pueblo, for defendants-appellees.

Opinion by Judge DAVIDSON.

Plaintiffs, Colorado Manufactured Housing Association (CMHA), Champion Enterprises, Inc., d/b/a Champion Home Builders Company (builder), and George C. Seeger d/b/a Seeger Homes (dealer), initiated this action against defendants Pueblo County, the Pueblo County Board of Commissioners, Sollie Reso, Pueblo County Commissioner Chairman, George Amaya and James Brewer, Pueblo County Commissioners, Pueblo County Department of Planning and Development, and Charles Finley, Director of the Pueblo County Department of Planning and Development (Pueblo). The trial court dismissed the action on the basis of lack of standing and plaintiffs appeal. We reverse and remand.

This action arises out of Pueblo's refusal to approve a property owner's application for a building permit to install his newly purchased manufactured home on his Pueblo County property, which is zoned single-family residential (R–2).

The property owner's manufactured home was built by plaintiff builder in conformity with construction and safety standards developed and promulgated by the Federal Department of Housing and Urban Development (HUD), pursuant to the National Manufactured Housing Construction and Safety Standards Act of 1974 (Manufactured Housing Act), 42 U.S.C. § 5401, et seq. (1988).

Pueblo's denial was in accordance with a local zoning resolution which, as is pertinent here, allows manufactured homes which are built to the standards of the Uniform Building Code (UBC) or its equivalent to be installed on R–2 property as of right, but which requires a building permit to install all other manufactured homes. It is undisputed that the relevant UBC standards are more stringent than the analogous HUD standards. Since the property owner's manufactured home did not meet UBC standards, Pueblo refused to approve installation.

After Pueblo denied his request for a permit, the property owner, who is not a party to this action, rescinded the sales contract with the manufactured home dealer.

Thereafter, builder, dealer, and CMHA brought suit alleging economic injury from loss of this and future sales. They claimed that the zoning resolution is invalid because, as it applies to manufactured homes, it is in conflict with the commerce clause and also because it is preempted by the Manufactured Housing Act and, thus, is violative of the supremacy clause. Plaintiffs additionally asserted a claim of violation of its right to due process and a claim under 42 U.S.C. § 1983 (1988) based on

Pueblo's alleged violation of the commerce clause and other of plaintiffs' federal rights.

Plaintiffs sought declaratory judgment, compensatory damages for their loss of sale, and an injunction, *inter alia,* preventing defendants from denying permits on HUD-manufactured homes for R–2 property.

Finding that plaintiffs had failed sufficiently to allege injury-in-fact, the trial court dismissed plaintiffs' claims for lack of standing. Further, it concluded that, even if their allegations were sufficient to establish injury-in-fact, such injury was not to any legally protected interests. It did not specifically address plaintiffs' § 1983 claim.

The property owner moved to intervene as a plaintiff, but the trial court did not rule on his motion before dismissing the action.

### I.

We will consider separately CMHA's contentions and address first the contention by builder and dealer that the trial court erred by determining that they have no standing to bring this action. We agree with that contention.

■ The resolution of standing requires a court to determine, based primarily upon the allegations contained in the complaint, whether a plaintiff was injured in fact and whether the injury was to a legally protected right. *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977); *see Archer Daniels Midland Co. v. State,* 690 P.2d 177, 181 (Colo.1984) ("we have distinguished the *Wimberly* legally-protected-interest from the federal arguably-within-the-zone-of interest standing test").

■ A party seeking declaratory or injunctive relief may satisfy the injury-in-fact test by showing that the action complained of has threatened to cause injury. *Colorado General Assembly v. Lamm,* 700 P.2d 508 (Colo.1985); *see Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231 (Colo.1984) (required showing of demonstrable injury is somewhat relaxed in declaratory judgment actions).

■ If the complaint fails to allege injury, the case must be dismissed; if the plaintiff does allege sufficient injury, the question whether the plaintiff is protected by law from the alleged injury must be answered. *Colorado General Assembly v. Lamm, supra.*

In determining whether a plaintiff has asserted a sufficient injury to satisfy the test of standing, the court must accept the averments of the complaint as true, *Colorado General Assembly v. Lamm, supra,* and must view the allegations in the light most favorable to the plaintiff. *Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992).

### A.

Builder and dealer contend that the trial court erred by determining that they had not alleged injury-in-fact. We agree.

In their complaint plaintiffs alleged both actual and threatened injury to their economic interest resulting from defendants' actions pursuant to the zoning resolution. Specifically, they alleged that they suffered injury by the specific loss of sale of a manufactured home to the property owner when Pueblo, on the basis of the challenged zoning resolution, denied owner's application for installation of the home on his R–2 property. They further alleged that future sales of their HUD manufactured homes will be adversely affected by such policies, laws, and actions.

However, Pueblo argues and the trial court determined, that, with respect to future economic losses, such losses are too speculative since the zoning board might not deny any future requests for permits by HUD home buyers on R–2 property. We reject this argument.

Injury-in-fact, whether actual or threatened, requires that the alleged injury be "sufficiently direct and palpable to allow a court to say with fair assurance that there is an actual controversy proper for judicial resolution." *O'Bryant v. Public Utilities*

*Commission,* 778 P.2d 648, 653 (Colo.1989); *see Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo.1980) (petitioners did not expressly allege direct economic losses or injuries traceable to the commission's action).

■ Here, plaintiffs allege that what happened once—loss of a sale as a result of Pueblo's enforcement of the challenged resolution—will continue until plaintiffs receive declarative and injunctive relief. Thus, plaintiffs allege that the injury is direct. Moreover, if, as plaintiffs request, Pueblo is enjoined from restricting HUD manufactured homes from locations on which UBC manufactured homes are permitted as of right, then their injury will be redressed by a favorable judicial decision.

We therefore conclude that plaintiffs' allegations of threatened injury are sufficient for purposes of standing. *See O'Bryant v. Public Utilities Commission, supra,* at 653 (plaintiff's injuries, "while arguably not severe" were not "so indeterminate, indirect, or trivial as unlikely to be redressed by a favorable judicial decision").

We note that in its order, the trial court, although it acknowledged the plaintiffs' allegation that they suffered actual injury when they lost the sale of the manufactured home to the property owner, concluded that plaintiffs' injury "occurred as a direct result of private contract obligations" and not from Pueblo's decision to deny the property owner a permit. However, the question whether the injury resulted from the alleged action of the defendant is not part of the inquiry on standing, but instead "is properly reserved for the trier of fact and is the primary question to be resolved on the merits." *Wimberly v. Ettenberg, supra,* 570 P.2d at 539.

## B.

The second prong of the test requires that plaintiffs' injury be to a legally protected interest in the context of their claims for relief. *See Wimberly v. Ettenberg, supra* (the broad question is whether the plaintiff has stated a claim for relief

which should be entertained in the context of a trial on the merits).

■ Builder and dealer contend that they have standing to challenge the validity of the zoning ordinance on the grounds that it violates U.S. Const. art. I, § 8, cl. 3 (commerce clause). We agree.

■ A state law that discriminates against interstate commerce is invalid. *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930 (Colo.1985).

■ The commerce clause, in addition to giving Congress preemptive authority over the regulation of interstate commerce, is a substantive "restriction on permissible state regulation" of interstate commerce and "has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *Dennis v. Higgins,* 498 U.S. 439, ——, 111 S.Ct. 865, 870, 112 L.Ed.2d 969, 978 (1991) (the commerce clause of its own force imposes limitations on state regulation of commerce).

Our supreme court has held that the commerce clause creates a legally protected interest on the part of individual businesses to be free of state regulations which discriminate against interstate commerce. *Archer Daniels Midland Co. v. State, supra.*

Here, plaintiffs' complaint states that both builder and dealer are engaged in the interstate commerce of manufactured homes which comply with HUD regulations. They allege that the zoning resolution effects the disenfranchisement of a lawful product from commerce within Pueblo County; denies them the benefits, rights, and privileges of federal law; works as a preference for local contractors and builders of homes and as a detriment and a preclusion of competition in commerce and industry located elsewhere; and is anticompetitive, constitutionally-infirm, and an impermissible burden on interstate commerce. The zoning resolution, they allege, caused actual economic injury and will continue to cause competitive harm in the future.

Hence, builder and dealer have alleged economic injury to their interest to be free of state regulations which discriminate against interstate commerce. Since such interest is legally protected by the commerce clause, we conclude that they have standing to pursue the action under this claim.

### C.

■ Builder and dealer also contend that they have standing to challenge the validity of the zoning ordinance on the grounds that it is preempted by the Manufactured Housing Act and, thus, violates U.S. Const. art. 6, cl. 2 (supremacy clause). We agree.

The purpose of the preemption doctrine is to establish a priority between potentially conflicting laws enacted by various levels of government. *Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, 830 P.2d 1045 (Colo.1992). The underlying rationale of that doctrine is that the supremacy clause invalidates state laws that "interfere with, or are contrary to, the laws of Congress." *Brubaker v. Board of County Commissioners*, 652 P.2d 1050, 1054 (Colo.1982). *See People v. Deitchman*, 695 P.2d 1146 (Colo.1985) (supremacy clause prohibits states from enacting legislation contrary to or inconsistent with the federal law).

Although the supremacy clause "is not a source of any federal right," it " 'secure[s]' federal rights by according them priority whenever they come in conflict with state law." *Golden State Transit Corp v. City of Los Angeles*, 493 U.S. 103, 107, 110 S.Ct. 444, 449, 107 L.Ed.2d 420, 428 (1989).

Accordingly, builder and dealer assert that the Manufactured Housing Act is the source of their right to be free from enforcement of the zoning resolution which they allege is preempted by and in derogation of that Act.

The Manufactured Housing Act, in a paragraph entitled "Supremacy of Federal standards," expressly provides that no state shall have the authority "to establish, or to continue in effect, [any] standard regarding construction or safety applicable

to the same aspect of performance of such manufactured home which is not identical to the federal manufactured home construction and safety standard." 42 U.S.C. § 5403(d) (1988).

■ Thus, by its express language, the Manufactured Housing Act preempts local regulations which impose standards of construction and safety different from those set forth in the Act. *See Scurlock v. City of Lynn Haven, Florida*, 858 F.2d 1521 (11th Cir.1988) (the Act precludes states from imposing construction and safety standards upon manufactured homes that differ in any respect from standards developed by HUD).

■ An injured party has the right to "assert an immunity from state or local regulation on the ground that the Constitution or a federal statute, or both, allocate the power to enact the regulation to the National Government, to the exclusion of the States." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 113, 110 S.Ct. 444, 452–453, 107 L.Ed.2d 420, 433 (1989).

Hence, plaintiffs have a legally protected interest to be free from regulations which are arguably preempted by federal law.

■ Here, builder and dealer assert that, as a requirement for a home to be located on R–2 property in Pueblo County, the zoning resolution imposes construction and safety standards which are inconsistent with standards developed by HUD. Plaintiffs allege injury from Pueblo's enactment and enforcement of the illegal zoning resolution and request relief from any locally-imposed standards which are covered by the Manufactured Housing Act.

Taking their allegations as true, we conclude that they have sufficiently alleged injury to a legally protected interest and, thus, also have standing to challenge the resolution as a violation of the preemption provisions of the Manufactured Housing Act under the supremacy clause.

### D.

 Insofar as Pueblo argues that plaintiffs, in order to challenge the zoning resolution, must be owners of property affected by the zoning resolution and must have sustained injury to some interest in real property, we do not agree.

In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the supreme court considered the standing of certain nonproperty owners, who asserted standing as persons of low or moderate income, to challenge an exclusionary zoning ordinance. Standing was denied, but that denial was not because plaintiffs were not property owners, but rather because they had failed to allege any injury to their protected interests resulting from the ordinance, as required by the test for standing. Thus, the proper inquiry is whether the requirements of standing have been met, not the status of plaintiffs as property owners.

Moreover, the cases relied on by Pueblo do not support its argument that, to challenge this resolution, plaintiffs must own property. Standing in the referenced cases was denied to plaintiffs for other reasons. *See Brown v. Board of County Commissioners*, 720 P.2d 579 (Colo.App.1985) (zoning resolution in question permitted change in authorized use of land only by county or by person with an interest in the land and thus granted no legally protected interest in nonproperty owners); *Theobald v. Board of County Commissioners*, 644 P.2d 942 (Colo 1982) (plaintiffs asserted only property interests, to which there was no actual injury).

Here, plaintiffs assert that the zoning resolution is constitutionally infirm as violative of the commerce and the supremacy clauses. They have alleged injury-in-fact to legally protected economic interests, and therefore, under *Wimberly v. Ettenberg, supra,* they have standing regardless of their status, or lack thereof, as property owners.

### E.

Builder and dealer further contend that they asserted a valid cause of action under 42 U.S.C. § 1983 for violation of rights secured by the commerce clause. Although the trial court did not address this issue, because it may arise on remand, we address it here and conclude that plaintiffs do have standing.

Section 1983 provides a federal remedy for the deprivation "of any rights, privileges, or immunities secured by the Constitution and laws." *Mosher v. Lakewood,* 807 P.2d 1235 (Colo.App.1991).

 To assert a § 1983 claim, a plaintiff must allege that a defendant acted under color of state law and that the defendant's action deprived plaintiff of a right secured by the federal constitution or federal laws. *State v. DeFoor,* 824 P.2d 783 (Colo.1992).

 Here, plaintiffs have alleged that the individual county officials, *see Lucchesi v. State,* 807 P.2d 1185 (Colo.App.1990) (county officials are persons against whom § 1983 action may be brought), acting in their official capacities, deprived plaintiffs of constitutional rights under the commerce clause. *See Dennis v. Higgins, supra* (suits for violations of commerce clause may be brought under § 1983); *Archer Daniels Midland Co. v. State, supra.* Specifically, they allege that the officials deprived them of their right under the commerce clause to engage in interstate commerce free of regulations which interfere with or burden such commerce.

Because plaintiffs have satisfied the requirements for asserting a § 1983 claim, we conclude they have standing. *See State Board for Community Colleges & Occupational Education v. Olson,* 687 P.2d 429 (Colo.1984) (determination that standing exists amounts to a holding that the plaintiff has stated a claim for relief by demonstrating the existence of a legal right or interest which has been arguably violated by the action of defendant).

Because of our holding, we need not address plaintiffs' contention that there are additional bases for establishing their standing to bring this action. Further, we

note that our determination that plaintiffs have standing to challenge the zoning resolution is based on their allegations and is not equivalent to a holding on the merits of the plaintiffs' claims. *See Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra,* at 1053 (determination of standing "does not amount to an adjudication on the merits of the case, but rather means simply that the party seeking judicial relief has stated a claim by demonstrating the existence of a legal right or interest which has been arguably violated by the conduct of the other party").

## II.

Finally, we consider the contention of CMHA that the trial court erred by denying it standing to assert the identical claims asserted by builder and dealer. In the complaint, CMHA alleged that its members, including manufacturers, wholesalers, and retailers of HUD Code manufactured homes, "are being precluded from the lawful sale of their products in Pueblo [by] these policies, laws and actions." We infer, although CMHA does not use the term, that CMHA is asserting associational standing for these members. The trial court denied CMHA standing on the same grounds it denied standing for builder and dealer without considering additional requirements of associational standing. We remand for the trial court to do so.

A voluntary membership association may have standing to seek judicial relief for injuries to rights of its members. An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *Conestoga Pines Homeowners' Ass'n v. Black,* 689 P.2d 1176 (Colo.App.1984).

Here, the record is insufficient to determine associational standing as a matter of law. Even if we assume that CMHA's other members, like builder and dealer,

have standing to sue in their own right and that their participation is not required to obtain declaratory and injunctive relief, there is nothing in the record from which to discern the purpose of the organization and whether the interests it seeks to protect are germane to that purpose. We therefore remand this issue to the trial court for its determination.

Plaintiffs do not argue in their briefs issues concerning their due process claim or their § 1983 claim based on the equal protection and supremacy clauses. Thus, we do not address them.

The judgment is reversed as to builder's and dealer's standing, and the cause is remanded to the trial court to determine the issue of CMHA's associational standing and for further proceedings.

METZGER and PLANK, JJ., concur.