# IN THE SUPREME COURT OF IOWA

No. 16–0435

Filed August 31, 2018

**CITY OF CEDAR RAPIDS,**

Appellee,

vs.

**MARLA MARIE LEAF,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Patrick R. Grady, Judge.

Plaintiff requests further review after magistrate in small claims court action found a violation of a municipal ordinance. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

James C. Larew of Larew Law Office, Iowa City, for appellant.

James H. Flitz, City Attorney, and Patricia G. Kropf, Assistant City Attorney, for appellee.

**APPEL, Justice.**

This case involves the enforcement of an automated traffic enforcement (ATE) system, but unlike its companion case, *Behm v. City of Cedar Rapids*, ___ N.W.2d ____ (Iowa 2018), where the district court granted the city's motion for summary judgment, this case proceeded to trial, with a judgment adverse to the defendant.

In this appeal, Marla Leaf, a registered vehicle owner, makes a series of challenges to an adverse judgment arising out of the operation of an ATE system established by the City of Cedar Rapids (Cedar Rapids) through a municipal ordinance. Leaf received a notice of violation from Cedar Rapids asserting that she was speeding while traveling southbound at the J Avenue exit on Interstate 380 (I-380) where the ATE system was operating. She contested the citation by following the directions on the notice. After a telephonic hearing, an administrative hearing officer ruled against her challenge to the citation. Leaf then requested Cedar Rapids file a municipal infraction against her in small claims court pursuant to the ordinance.

As a result of Leaf's request, Cedar Rapids filed the municipal infraction naming Leaf as a defendant in the district court. A magistrate sitting as a small claims court held an evidentiary hearing on the matter. The magistrate found clear and convincing evidence that Leaf violated the ATE ordinance, rejected Leaf's legal challenges to enforcement, and assessed a civil penalty of $75, plus court costs. Leaf appealed the small claims decision to the district court. The district court affirmed.

Leaf appealed the ruling of the district court. On appeal, Leaf claims that Cedar Rapids failed to show a violation of the ordinance by clear and convincing evidence. She further asserts that the ordinance establishing the ATE system unlawfully granted jurisdiction over

enforcement to an unauthorized administrative tribunal. Finally, Leaf challenges the enforcement of Cedar Rapids' ATE ordinance on several constitutional theories. Specifically, Leaf claims the ordinance violates the Iowa Constitution by unlawfully delegating police power to a private entity, the ATE contractor Gatso USA, Inc. (Gatso). She further claims that the ordinance, on its face and as applied, violates procedural and substantive due process of law and offends the equal protection and privileges and immunities clauses under the Iowa Constitution.

We transferred the appeal to the court of appeals. The court of appeals affirmed the district court judgment. For the reasons expressed below, given the posture of this case, we affirm the judgment of the district court and the decision of the court of appeals concluding that Leaf violated the ATE ordinance.

## I. Factual and Procedural Background.

### A. Structure of Cedar Rapids ATM System.

1. *The ordinance.* In 2009, Cedar Rapids enacted an ordinance establishing an ATE system. Cedar Rapids, Iowa, Mun. Code § 61.138 (2016).[1] The ordinance authorizes Cedar Rapids to "deploy, erect or cause to have erected an automated traffic enforcement system for making video images of vehicles that . . . fail to obey speed regulations . . . in the city." *Id.* § 61.138(a). The ordinance authorizes the hiring of a contractor "with which the City of Cedar Rapids contracts to provide equipment and/or services in connection with the Automated Traffic Enforcement System." *Id.* § 61.138(b)(2).

The ordinance provides that when the ATE system generates an image of a speeding vehicle, a notice of violation is mailed to the vehicle

---

[1]The ordinance is available online at https://www.municode.com/library/ia/cedar-rapids/codes/code_of_ordinances?nodeld=CH6ATRRE_61.138AUTREN.

owner within thirty days of obtaining the owner's identifying information. *Id.* § 61.138(d)(1). The ordinance further provides that a vehicle owner may contest the citation by requesting an administrative hearing "held at the Cedar Rapids Police Department before an administrative appeals board . . . consisting of one or more impartial fact finders." *Id.* § 61.138(e)(1). Upon receiving the decision of the board, the ordinance provides a vehicle owner with the option of either paying the fine or submitting a request that Cedar Rapids file a municipal infraction in the small claims division of district court. *Id.* § 61.138(e)(2).

In any small claims court proceeding, Cedar Rapids is required to show "by clear, satisfactory, and convincing evidence" that the vehicle was travelling in excess of the posted speed limit. Iowa Code § 364.22(6)(*b*) (2015). The ordinance authorizes a fine of between $25 and $750. Cedar Rapids, Iowa, Mun. Code § 61.138(c)–(d). The ordinance also notes that state-mandated court costs are added to the amount of the fine if the vehicle owner is found guilty after a small claims court proceeding. *Id.* § 61.138(e); *see also* Iowa Code § 364.22(8).

2. *Gatso's contract with Cedar Rapids.* Pursuant to the ordinance, Cedar Rapids entered into a contract with Gatso in 2009. Under the contract, Gatso installed ATE cameras at selected locations. Gatso owned the ATE equipment and was responsible for annual calibrations and preventative maintenance.

Gatso was also responsible for developing images and obtaining data, including speed calculations, from the ATE equipment. If an event met the criteria for a violation, Gatso sent the license plate data to a database for name, address, and vehicle information. Gatso then presented the prescreened information that supported potential violations to the Cedar Rapids Police Department. The police department

reviewed the information and either approved or rejected each violation. If Cdar Rapids approved a violation, Gatso sent a notice of violation by mail to the registered owner of the vehicle.

**B. Gatso's Notices to Alleged Violators.**

1. *Content of notice of violation.* Vehicle owners who were alleged to have violated the ATE ordinance received a "Notice of Violation." The notice of violation displayed the City of Cedar Rapids logo and had the signature of the Cedar Rapids law enforcement officer who approved issuing the citation.

The front page of the notice of violation provided information about the time and place of the alleged violation along with two photos of the vehicle recorded by the ATE system. The front page of the notice of violation provided the following admonition:

> Failure to pay the civil fine or to contest liability within (30) calendar days is an admission of liability in the full amount of the civil fine assessed and will result in the loss of your right to a hearing. In addition, you may be subject to formal collection procedures including, but not limited to, being reported to a credit reporting agency, and a civil lawsuit.

The backside of the notice of violation provided information about how to pay the civil penalty. It also stated that a person receiving the notice of violation had a right to contest the violation in person at an administrative hearing. The notice of violation suggested that recipients wishing to contest the violation "review the city ordinance, the images, and the actual recorded video (if applicable) of the infraction" and provided a limited list of "valid defenses." The list of valid defenses did not include a defense that the driver was a person other than the vehicle's registered owner. The backside of the notice of violation cautioned that the failure to appear at an administrative hearing "will result in a final determination of liability." The notice of violation made

no mention of the recipient's option of requesting Cedar Rapids initiate a small claims action in district court where Cedar Rapids would bear the burden of proof of showing a violation "by clear, satisfactory, and convincing evidence." Iowa Code § 364.22(6)(*b*).

2. *Content of "notice of determination of liability."* If the first notice of violation did not result in payment or the scheduling of an administrative hearing, Gatso sent out another document to the vehicle owner entitled "Notice of Determination 2nd Notice." As with the notice of violation, the notice of determination carried the City of Cedar Rapids logo and had the signature of a law enforcement officer.

The notice of determination of liability provided the same information about the time and place of the alleged offense as the notice of violation. It contained, however, a slightly different admonition than the original notice of violation:

> Failure to pay the civil fine or to appeal this determination within (30) calendar days may result in the possible imposition of a late fee. In addition, you may be subject to formal collection procedures including, but not limited to, being reported to a credit reporting agency, and a civil lawsuit.

The backside of the notice of determination also differed from the notice of violation. Unlike the notice of violation, the notice of determination declared that citizens may resolve the notice of determination by paying the fine or "request[ing] a trial before a judge or magistrate" within thirty days of the date listed on the front of the notice.

**C. Appeal Before Administrative Appeals Board.** Although the ATE ordinance refers to an administrative appeals board, the ordinance states that the board consisted of "one or more impartial fact finders." Cedar Rapids, Iowa, Mun. Code § 61.138(3)(1). In the administrative hearing in this case, the board consisted of a single person. The

ordinance does not establish procedures or criteria for appointment, nor does the ordinance describe a burden of proof or the procedures to be applied in the administrative proceedings.

### D. IDOT Rulemaking and Enforcement Actions.

1. *IDOT rules related to ATE systems.* As in *Behm*, Leaf relies on IDOT rulemaking and enforcement actions in support of her appeal. Several years after the Cedar Rapids ATE system commenced operation, in February of 2014, the IDOT promulgated administrative rules relating to ATE systems. *See* Iowa Admin. Code ch. 761—144. The rules declared that their purpose was "to establish requirements, procedures, and responsibilities in the use of automated traffic enforcement systems on the primary road system" and to "ensure[] consistency statewide" in their use. *Id.* r. 761—144.1.

The IDOT rules sharply restricted the implementation of ATE systems on primary roadways. The rules directed that ATE systems were to be considered only "after other engineering and enforcement solutions have been explored and implemented" and were not to be used as a long-term solution to speeding or red-light running. *Id.* r. 761—144.4(1)(*a*)–(*b*). The rules provided that ATE systems were to be used only "in extremely limited situations on interstate roads because [such roads] are the safest class of any roadway in the state and typically . . . carry a significant amount of non-familiar motorists." *Id.* r. 761—144.4(1)(*c*). The rules further stated that ATE systems should only be considered "in areas with a documented high-crash or high-risk location" in "[a]n area or intersection with a significant history of crashes which can be attributed to red-light running or speeding," or "[a] school zone." *Id.* r. 761—144.4(1)(*d*).

The IDOT rules contained minimum requirements for the operation of ATE systems. *Id.* r. 761—144.6. Among other requirements, the rules provided that ATE systems could not "be placed within the first 1,000 feet of a lower speed limit." *Id.* r. 761—144.6(*b*)(10). The rules required that ATE "fixed systems" be calibrated at least quarterly "by a local law enforcement officer trained in the use and calibration of the system." *Id.* r. 761—144.6(4).

The IDOT rules required that each jurisdiction with an active ATE system on primary highways prepare an annual report on the operation of the system and submit the report to the IDOT. *Id.* r. 761—144.7(1)–(2). The local evaluation was to include (1) an analysis of the impact of the ATE system in reducing speeds or red-light running; (2) the number and type of collisions at the sites, including before-and-after implementation comparisons; (3) an evaluation of the ATE system's impact on critical safety issues; (4) the total number of citations issued during each calendar year; and (5) certification that the calibration requirements of the rule had been met. *Id.* r. 761—144.7(1)(*a*)(1)–(5).

Upon receipt of the annual report, the IDOT used the information from the report to reevaluate the continued use of the ATE system. *Id.* r. 761—144.8(1). The rules provided that continued use of the ATE system was contingent upon the effectiveness of the system, appropriate administration by the local jurisdiction, continued compliance with ATE rules, changes in traffic patterns, infrastructure improvements, and implementation of other identified safety measures. *Id.* r. 761—144.8(1)–(2). The IDOT "reserve[d] the right to require removal or modification of a system in a particular location, as deemed appropriate." *Id.* r. 761—144.8(2).

2. *IDOT evaluation of the Cedar Rapids ATE sites on I-380.* On March 17, 2015, the IDOT issued an evaluation of Cedar Rapids' ATE program. In terms of the general findings related to the ATE system on I-380, the IDOT noted there were eighty-two crashes in 2008 and 2009 prior to ATE implementation and fifty-nine crashes in 2012 and 2013, two years after the implementation in 2010. The IDOT report noted that the greatest area of safety concern was an "S" curve in downtown Cedar Rapids. The IDOT stressed that the dangers associated with the "S" curve, however, were in entering the "S" curve, not leaving the "S" curve. The IDOT noted, echoing its rules, that ATE systems should only be considered in "extremely limited situations on interstate roads because they are the safest class of any roadway in the state and they typically carry a significant amount of non-familiar motorists." The IDOT reported that many safety countermeasures had been added to this section of the roadway since a safety audit conducted in 2008 and published in 2009.

The IDOT report proceeded to evaluate each of the four ATE sites on I-380. With respect to the site on I-380 northbound near Diagonal Drive, the IDOT concluded that because the current equipment was located 859 feet beyond a reduction in speed limit from sixty to fifty-five miles per hour, the equipment should be moved to the next truss to the north to ensure that the equipment complied with the 1000-foot requirement of rule 761—144.6(1)(*b*)(10). The IDOT evaluation came to a similar conclusion with respect to the ATE site on I-380 southbound near J Avenue. There, the ATE cameras were located 896 feet beyond a change of speed instead of the 1000 feet required by the IDOT rule.

Two other Cedar Rapids ATE sites, however, received different treatment. The IDOT evaluation concluded that the ATE site at I-380 northbound near J Avenue and the site at I-380 southbound near the lst

Avenue ramp should be removed or disabled. According to the IDOT, these two ATE systems were located either well beyond or mostly beyond the area of concern presented by the "S" curve. Further, with respect to the site at I-380 northbound near J Avenue, the IDOT found that the issuance of speeding citations in excess of 30,000 per year was "extremely high."

Cedar Rapids appealed the IDOT evaluation to the director. Cedar Rapids raised issues concerning the IDOT's legal authority to implement its ATE rules, Cedar Rapids' home rule authority, and the procedure the IDOT followed regarding its ATE rules. Cedar Rapids also appears to have asserted that the IDOT rules did not apply retroactively to ATE systems in place prior to the rules promulgation.

3. *Cedar Rapids appeals IDOT evaluation.* On May 11, 2015, the director denied the appeal. Cedar Rapids appealed the IDOT action to the district court. The district court affirmed the IDOT action, and Cedar Rapids appealed. We concluded the IDOT lacked the necessary statutory authority to promulgate its ATE rules. *See City of Des Moines v. Iowa Dep't of Transp.*, 911 N.W.2d 431 (Iowa 2018).

**E. Notices of Violations and Administrative Proceedings Involving Leaf.** Leaf received a notice of violation arising from the ATE system. The notice of violation claimed that Leaf traveled at a speed of sixty-eight miles per hour in a fifty-five mile-per-hour zone on February 5, 2015, at 1:59 p.m. The notice of violation stated that the location of the event was "I380 SB @ J Avenue, Lane 2."

The backside of the notice of violation provided detailed information on how to contest the alleged violation. The notice of violation gave the recipient the option of paying the civil penalty and waiving the right to a hearing or contesting the violation. According to

the notice of violation, the recipient had "the right to contest this violation in person at an administrative hearing or by mail if [the recipient] resides outside the state of Iowa." The notice of violation further stated that "[i]n order to state a valid defense supporting dismissal of this citation, it is recommended that [the recipient] reviews the city ordinance, the images and the actual recorded video . . . of the infraction" available online before contesting the violation. The notice of violation further stated that if after such review, the recipient believed he or she had a valid defense, the vehicle owner could contest the cited violation at an administrative hearing.

The notice of violation also provided a list of "valid defenses" to a violation. The notice of violation made no mention of the possibility of foregoing the administrative appeal process and requesting Cedar Rapids issue a municipal infraction and file it in small claims court.

**F. Administrative Hearing on Leaf Citation.** Leaf requested an administrative hearing, which was held on March 4, 2015. Leaf participated by telephone. The subsequent administrative order stated that the citation was sustained, declared payment due by April 4, and concluded that the judgment total was $75. The administrative order noted that failure to timely pay the amount "will result in possible imposition of further fees, collection efforts and legal action."

The administrative order also noted, however, that the vehicle owner had the option of requesting that in lieu of the citation Cedar Rapids issue a municipal infraction and file it in the small claims court. The administrative order provided a website where the vehicle owner could find a request form and a copy of the ATE ordinance.

The applicable form was entitled "Request for Municipal Infraction in Lieu of Citation by Administrative Proceeding." The form provided that

the vehicle owner requested to be named as a defendant in a small claims action. The form noted that if the owner was found "guilty" of the municipal infraction, state-mandated court costs would be added to the amount of the fine. The form noted that Cedar Rapids reserved the right to exercise "any and all remedies," including any lawful means of enforcing judgment obtained as a result of the municipal infraction being filed. Leaf filled out the form and returned it as instructed.

**G. Proceedings in Small Claims Court on Leaf Infraction.** Cedar Rapids filed a municipal infraction in small claims court against Leaf. The magistrate assigned to the matter set a May 26 evidentiary hearing date.

1. *Motion to dismiss.* Leaf filed a motion to dismiss the proceeding just prior to the hearing date. In her motion to dismiss, Leaf asserted that the IDOT had determined that the ATE system that led to her infraction was in violation of IDOT administrative rules. According to Leaf, to enforce Cedar Rapids' infraction when the equipment did not comply with administrative rules violated due process of law under the United States and Iowa Constitutions. Leaf also claimed that the effort to enforce the ordinance contrary to IDOT's express orders to remove the equipment violated due process under both constitutions.

Leaf also asserted in her motion to dismiss that the rear license plate identification process utilized by Cedar Rapids and Gatso did not allow for the identification of millions of semi-trailer trucks whose rear plate numbers are not included in the applicable database utilized to identify infractions. Further, Leaf asserted that government-owned vehicles are also excluded because their special license plates are not included in the database utilized by Cedar Rapids and Gatso. According to Leaf, enforcement against her under these circumstances violated the

Equal Protection Clause of the United States Constitution and the privileges and immunities clause of the Iowa Constitution.

Finally, Leaf asserted in her motion to dismiss that the administrative process created by the ATE ordinance "is without a lawful basis." Leaf asserted the administrative hearing process subverted "the express provisions of the Iowa Code governing prosecution of civil infractions." The hearing officers, according to Leaf, were selected by and at the pleasure of the police department and as such "provided no objective, independent judgment using any ascertainable standards to determine liability or non-liability." In a statement before the magistrate, Leaf expanded her argument to assert that the administrative appeal violated due process of law and amounted to an unlawful delegation of power to a hearing officer.

The magistrate court reserved ruling on any legal issues raised in the motion to dismiss and allowed Cedar Rapids to respond in seven days. Cedar Rapids ultimately asserted that the IDOT order did not apply retroactively, that the IDOT's administrative rules did not give rise to any private right of action, that the ordinance was rationally related to its safety purpose and therefore did not violate due process, that the ordinance was rational and that incremental problem solving or underinclusiveness did not violate equal protection or privileges and immunities, and that the creation of an administrative hearing structure was well within Cedar Rapids' home rule authority.

2. *Evidence at trial.* At the small claims trial, Cedar Rapids called Leaf as its first witness. Leaf testified that she owned a Fort Mustang vehicle with the license plate captured by the ATE system. She further admitted to driving her vehicle on February 5, 2015, at 1:59 p.m., the date and time cited on the notice. Leaf stated she was sixty-five years old

and had been driving for fifty-one years. In all that time, prior to the automated notice, she had never received a speeding ticket. She further testified that road conditions were icy, that she had texted her son that day warning of icy conditions, that vehicles passed her at a greater speed, and that she believed she was driving below the speed limit.

Leaf also testified about the administrative hearing process. When she called the number to appeal the citation, Leaf was told that the only available time was March 4, at 7:30 p.m. Leaf had caregiving responsibilities at that time and sought a different time but was told that no other time was available. At the appointed time, Leaf received a phone call from the hearing officer who, after hearing her deny speeding, found her guilty and told her to pay the fine. He also told her, she testified, that it would cost her hundreds of dollars if she did not pay the fine. Leaf testified that she received a formal written notice of the March 4 hearing on March 9, four days after the hearing. Further, Leaf testified that on March 15 she filed a request that Cedar Rapids file a municipal infraction in small claims court. Thereafter, on April 6, she received a notice of determination, second notice.

Cedar Rapids next called Officer Harvey Caldwell of the Cedar Rapids Police Department. He testified about the administration of Cedar Rapids' ATE system. Caldwell explained that before a notice of violation is sent to the vehicle owner, Gatso sends the notice (violation package) to the police department. The department reviews the notice and makes the decision as to whether to have Gatso send the notice of violation to the vehicle owner. He said that no one other than the Cedar Rapids Police Department approves the issuance of notices. He testified that he was responsible for reviewing the information supplied by Gatso related to Leaf's citation and approved sending the notice of violation. He

further testified that the police department does not compute the speed of the vehicle—that is done by the Gatso radar equipment and then Gatso provides this information to the police department. He also stated he had never calibrated the radar equipment on the truss-mounted cameras.

Cedar Rapids also called Officer Robert Asplund of the Cedar Rapids Police Department to testify about the administration of the ATE system. Asplund testified about equipment calibration. He said that a Gatso technician performed a yearly calibration on the equipment. The calibration process checks to see if the equipment is calculating speed accurately. The most recent calibration of the radar equipment that recorded Leaf as speeding occurred on June 25, 2014, a record of which was entered into evidence. Officer Asplund testified the calibration record showed that the equipment was functioning correctly.

Officer Asplund also testified that the police department itself checks the functioning of the equipment four times a year by running a squad car by the radar and camera equipment at a set speed and confirming that the radar accurately measures the speed. However, Cedar Rapids did not offer documentation regarding the tests performed by the police department into evidence. Finally, Officer Asplund stated the volunteer hearing officer in this case, Chris Mayfield, did not work for the police department, but he knew some police officers because his father had been a police officer.

Billy Lawrence Heeren, Leaf's domestic partner and passenger in the car when the ATE system recorded her vehicle speeding, also testified. Heeren said that on the day in question, the roads were icy and slippery and he and Leaf saw accidents on the streets, which he believed had been caused by the slippery roads. In Heeren's opinion, Leaf had

been driving somewhere between fifty to fifty-five miles per hour around the J Avenue exit.

3. *Ruling from small claims court.* The magistrate issued an order, finding against Leaf and ordering payment of the $75 fine, plus court costs. The magistrate found that Cedar Rapids had proven by clear, satisfactory, and convincing evidence that the violation occurred. The magistrate found that, based on the evidence, the ATE system was functioning properly when it recorded Leaf's vehicle as speeding.

The magistrate rejected Leaf's due process challenges. With respect to the due process challenge related to the IDOT order to dismantle the cameras at the location involved in Leaf's citation, the magistrate noted that Leaf's citation predated the IDOT determination. The magistrate also rejected the procedural due process and unlawful delegation claim related to the administrative hearing, noting that Leaf received a de novo review of her claim in the small claims court. The magistrate rejected Leaf's substantive due process claim based upon a right to travel, noting that "no person has a fundamental right to speed or to avoid being seen by a camera on a public roadway." Further, according to the magistrate, the ordinance survived due process rational basis scrutiny because Cedar Rapids has a legitimate interest in "deterring speeding to ensure public safety," lessening the risk of police officers being struck while enforcing traffic laws, and "free[ing] up officers to monitor other areas of the city to further combat crime."

The magistrate also found that Leaf failed to show a violation of her equal protection rights. According to the magistrate, the mere fact that the ATE system does not have access to a database that includes all license plate numbers does not give rise to an equal protection violation.

### H. Appeal of Small Claims Judgment to District Court.

1. *Issues presented on appeal.* Leaf appealed the magistrate's order to the district court. In her appeal to the district court, Leaf argued that Cedar Rapids failed to prove that she violated the ordinance by clear, satisfactory, and convincing evidence.

Additionally, Leaf argued that the ordinance was unconstitutional on an array of theories. Specifically, she claimed that the ordinance violated her procedural and substantive due process rights. Leaf also asserted the ordinance amounted to a violation of the equal protection and privileges and immunities clause of the Iowa Constitution.

Leaf also asserted several additional nonconstitutional theories. She claimed that the ordinance was an unlawful attempt to grant jurisdiction to an administrative hearing officer and that Iowa law preempted the ordinance. Leaf further claimed that Cedar Rapids unlawfully delegated its police powers to Gatso and to an administrative hearing officer. Finally, she argued that Cedar Rapids was unjustly enriched by the fines collected. Cedar Rapids opposed Leaf's arguments.

2. *Ruling of the district court.* The district court found the record made before the magistrate adequate to render a judgment in the case and proceeded to decide the issues presented by Leaf. The district court found that Cedar Rapids had proven by clear, satisfactory, and convincing evidence that Leaf violated the ordinance. The district court relied on admissions by Leaf that she was driving the vehicle at the time and place cited in the notice of violation and the testimony of Officer Asplund that the equipment was properly calibrated. The district court also explained that Cedar Rapids was not required to submit a video of Leaf speeding or present evidence that someone actually witnessed Leaf speeding.

The district court next held that the ordinance was not an unlawful grant of jurisdiction to an administrative board or hearing officer. Citing Cedar Rapids' constitutional home rule authority and implementing statutes, the district court found that Cedar Rapids had authority to create an impartial and detached administrative board to hear contests between the City and vehicle owners regarding the issuance of an ATE citation. Further, the district court noted the ordinance provided for judicial review of ATE citations at the option of the owner.

The district court also held the ordinance did not violate procedural due process on its face or as applied to Leaf because of the unfairness of the administrative tribunal. The district court explained that ordinary judicial process, which was available and utilized by Leaf, satisfied procedural due process. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197, 121 S. Ct. 1446, 1451 (2001).

The district court also rejected Leaf's due process argument that her citation was invalid because of the IDOT's administrative decision related to the placement of ATE equipment. The district court rejected the due process challenge because (1) the IDOT's administrative decision was made after the date of Leaf's infraction and (2) the regulations related to the proper placement of traffic cameras do not afford Leaf a private remedy.

The district court further held that the ordinance did not violate Leaf's substantive due process right to intrastate travel or deprive her of property without due process. The district court rejected Leaf's argument that the ordinance violated her fundamental right to intrastate travel. While the district court recognized she had a property interest in avoiding irrational or arbitrary fines, the district court found a

reasonable fit between the ATE ordinance and the legitimate governmental interests furthered by it. The district court noted that the sites where the ATE devices are located are places where traditional traffic stops are dangerous to conduct. The district court further reasoned that the photo-radar devices encourage vehicles on I-380 to obey traffic regulations.

The district court rejected Leaf's privileges and immunities and equal protection claims. With respect to privileges and immunities, the district court noted that Leaf failed to articulate how Cedar Rapids' ATE ordinance treats citizens differently. With respect to equal protection, the court noted that because there was no suspect class or fundamental right at stake, the ordinance needed only to survive a rational basis test. The court held because the ordinance passed rational basis, Leaf's equal protection argument failed.

Finally, the district court held that Cedar Rapids did not delegate police power to a private company. The district court stated that Gatso "significantly participates" in the ordinance, but that under Cedar Rapids, Iowa, Municipal Code section 61.138(a), the decision to issue a notice of violation remains with the police department.

## II. Proceedings on Appeal.

Leaf requested discretionary review of the district court's ruling. We granted discretionary review and transferred the case to the court of appeals.

The court of appeals affirmed the district court. The court of appeals outlined the evidence against Leaf, noting that "[a]lthough we do not doubt the sincerity of Leaf's belief she was not speeding, upon our review, we find no error on the part of the district court" in finding clear, satisfactory, and convincing evidence that Leaf violated the ordinance.

With respect to procedural due process, the court of appeals explained that the ordinance specified two different methods of contesting the fine: (1) the administrative hearing and (2) a small claims action at Iowa district court. *See* Cedar Rapids, Iowa, Mun. Code § 64.138(e). The court of appeals stressed that the administrative hearing was optional and that the results of the hearing could be appealed to small claims court.

The court of appeals thus disagreed with Leaf's contention that Iowa Code section 364.22(6) requiring municipal infractions to be tried in small claims was violated by the ordinance's procedures. In a footnote, the court noted it was "somewhat troubling" that the notice of violation was misleading in that it did not inform of the alternative method of contesting the violation. The court concluded, however, that Leaf had adequate process because she had access to judicial process, either directly or after the administrative hearing. Additionally, the court noted, the United States District Court for the Northern District of Iowa rejected such a due process argument in *Hughes v. City of Cedar Rapids*, 112 F. Supp. 3d 817, 847–48 (N.D. Iowa 2015), *aff'd in part, rev'd in part*, 840 F.3d 987 (8th Cir. 2016).

The court of appeals summarily rejected Leaf's substantive due process and equal protections arguments as having been raised and rejected in *Hughes*, 840 F.3d at 995–97. The court also summarily rejected the privileges and immunities argument for "the same reasons [it] rejected her other constitutional arguments."

With respect to Leaf's unlawful grant of jurisdiction to an administrative board or hearing officer and preemption argument, the court of appeals initially addressed a preservation problem. The district court did not address the preemption aspect of Leaf's unlawful grant of

jurisdiction argument. "[I]t apparently got lost in the shuffle," the court of appeals speculated. But, the court noted, while it would ordinarily only address issues raised and decided by the district court, Leaf could not have filed a rule 1.904(2) motion to amend or enlarge the district court's review of a small claims appeal. Because Leaf was without a remedy for the district court overlooking this part of the argument, the court of appeals decided it would elect to address the argument. The court then rejected the argument as Leaf made it at the district court level, noting that the United States Court of Appeals for the Eighth Circuit and the Iowa Supreme Court had rejected similar arguments. *See Brooks v. City of Des Moines*, 844 F.3d 978, 980 (8th Cir. 2016); *Hughes*, 840 F.3d at 998; *Hughes*, 112 F. Supp. 3d at 849; *Davenport v. Seymour*, 755 N.W.2d 533, 542 (Iowa 2008).

With respect to Leaf's additional preemption argument before the court of appeals—that the ordinance was preempted by Iowa Administrative Code rule 761—144.6(1) and the March 2015 IDOT order—the court held this argument was raised for the first time on appeal and thus was not preserved. Even if the argument were preserved and was ripe for review, the court explained, the argument would fail because the doctrine of preemption is not concerned with the enforcement of an enactment that is not preempted on its face by a superior body's enactment.

Finally, the court of appeals agreed with the district court that Cedar Rapids had not delegated police powers to Gatso because the police department makes the determination of which vehicle owners receive a notice of violation. The court also cited an Eighth Circuit opinion holding that the ordinance was not an unlawful delegation of police powers. *See Hughes*, 840 F.3d at 998.

Leaf applied for further review, which we granted.

## III.  Standard of Review.

The parties agree that our review is for errors at law.  We are bound by the trial court's findings of fact so long as they are supported by substantial evidence.  *Smith v. State*, 845 N.W.2d 51, 54 (Iowa 2014).  When constitutional issues are raised, however, these are reviewed de novo.  *Midwest Check Cashing, Inc. v. Richey*, 728 N.W.2d 396, 399 (Iowa 2007); *Simonson v. Iowa State Univ.*, 603 N.W.2d 557, 561 (Iowa 1999).

## IV.  Challenge Based on Lack of Substantial Evidence.

The first question in this case is whether substantial evidence supports that Cedar Rapids established that Leaf was speeding in violation of the ordinance by clear, satisfactory, and convincing evidence as required by Iowa Code section 364.22(6)(*b*).  In making our determination, we give weight to the trial court's findings of fact, particularly when it comes to the credibility of witnesses.  *Jack Moritz Co. Mgmt. v. Walker*, 429 N.W.2d 127, 128 (Iowa 1988).

Leaf argues that the only eyewitnesses to the event, Leaf and Heeren, both testified that weather conditions were poor on the day of the alleged event and that Leaf was not speeding.  Leaf argues that Cedar Rapids' proof was based on hearsay evidence, particularly what Leaf labels "the calibration document," a document generated by Gatso that indicated the ATE system was calibrated several months prior to the events in question.  The thrust of Leaf's argument is that the eyewitnesses testified that Leaf was not speeding, while Cedar Rapids could only present hearsay and conjecture regarding whether the Gatso equipment was operating properly.

Cedar Rapids challenges Leaf's gloss of the evidence.  Cedar Rapids emphasizes that Officer Asplund testified extensively without objection

about Gatso's and the police department's routine calibrations of the system. With respect to hearsay evidence, Cedar Rapids asserts that such evidence is fully admissible in a small claims court proceeding and that, in any event, the evidence submitted without objection was sufficient to establish the violation by clear and convincing evidence.

Our review of the trial record reveals that Leaf candidly admitted she was driving her vehicle at the time and place recorded by the ATE system. Although she denied speeding, Cedar Rapids' ATE equipment recorded a violation. Cedar Rapids' witnesses testified that the equipment was properly calibrated and tested. As a result, it is not necessary for us to determine whether the district court erred in rejecting Leaf's hearsay objection to the admission of documents related to the calibration of the equipment. Based on our review of the record developed at trial, we conclude there was substantial evidence to support the small claims court's determination that Cedar Rapids proved by clear, satisfactory, and convincing evidence that Leaf violated the ordinance.

**V. Substantive Constitutional Challenges: Equal Protection, Privileges and Immunities, and Substantive Due Process.**

The arguments raised in this case with respect to equal protection, privileges and immunities, and substantive due process are generally the same as the arguments raised in *Behm*, ___ N.W.2d ___. We held in *Behm* that the ordinance did not infringe on the fundamental right to travel. *Id.* at ___. The appropriate standard of review is therefore rational basis. Unlike in *Behm*, however, Leaf's claims were not resolved on a motion for summary judgement, but after a trial on the merits.

In this case, the record is not more favorable to Leaf with respect to her constitutional challenges than the record was in *Behm*. For the

reasons cited in *Behm*, we reject the constitutional claims under the Iowa Constitution.

In addition, although it is questionable error was preserved, the Equal Protection and Due Process Clauses of the United States Constitution do not provide Leaf with greater protection than the Iowa Constitution in this case. As a result, we reject Leaf's state and federal constitutional claims based upon equal protection, privileges and immunities, and substantive due process.

**VI. Procedural Challenges Based on Preemption and Due Process.**

**A. Challenges Based on Preemption of Iowa Code Section 364.22 and Iowa Code Section 602.6101.** Leaf asserts that the ordinance improperly creates an administrative appeal board that deprives the small claims court of jurisdiction in cases involving "municipal infractions" arising from the ATE ordinance. Leaf claims Iowa Code sections 364.22 and 602.6101 preempt the administrative procedures established in the ordinance.

In this case, Leaf eventually was afforded the full panoply of procedural rights provided in Iowa Code sections 364.22 and 602.6101. As a result, she has not been prejudiced by any unlawful provisions of the ordinance in resolving the merits of her case. *See Markadonatos v. Village of Woodridge*, 760 F.3d 545, 561 (7th Cir. 2014) (emphasizing parties who participated in procedures must show injury from defective procedures in order to show prejudice from a defective notice); *Rector v. City of Denver*, 348 F.3d 935, 945 (10th Cir. 2003) (holding payment of fine not fairly traceable to defects in notice); *Roberson v. City of Rialto*, 173 Cal. Rptr. 3d 66, 74 (Ct. App. 2014) (finding plaintiff failed to show evidence of prejudice from defective notice). Further, in this case, Leaf

only seeks to appeal an adverse judgment in her small claims action. She does not seek declaratory or injunctive relief. *Cf. Colo. Manufactured Hous. Ass'n v. Pueblo County*, 857 P.2d 507, 510 (Colo. App. 1993) (noting a party seeking declaratory or injunctive relief may demonstrate injury by showing that they will be threatened with future injury).

Leaf claims Cedar Rapids' action is preempted by a provision of the Iowa Administrative Code which provides that ATE systems not be located less than 1000 feet from a change in speed. Iowa Admin. Code r. 761—144.6. In March 2015, the IDOT entered an order that the equipment be removed by April 2015. Leaf did not raise this claim before the district court and, as a result, it is not preserved. *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002). Even if this claim was preserved, our decision in *City of Des Moines*, 911 N.W.2d at 434, holding that IDOT did not have authority to promulgate ATE rules, resolves her claim in favor of Cedar Rapids. *See Behm*, ___ N.W.2d at ___.

**B. Procedural Due Process.**

1. *Positions of the parties.* Leaf raises claims similar to those in *Behm*. Leaf, however, presents some additional facts beyond that presented in Cedar Rapids' motion for summary judgment in *Behm*.

Leaf presented evidence regarding Cedar Rapids' implementation of the administrative procedures in her case. When she called to appeal the notice of violation but could not appear in person at Cedar Rapids' preferred time, she asserts Cedar Rapids employees told her to "just pay it." Leaf claims Cedar Rapids ignored her certified-mail request that the administrative hearing be rescheduled. Leaf claims that when she was called at home on the evening that Cedar Rapids scheduled the hearing, she spoke with a hearing officer—the son of a police officer with no legal experience or training—who found her liable based upon a

preponderance of evidence. Leaf cites the order she received after the administrative hearing, which warned her that she would have to pay up to $150 above the $75 fee if she appealed to district court and was unsuccessful.

Leaf assets that Cedar Rapids' handling of these matters does not comport with procedural due process. She notes that under our caselaw, a person has a protected property interest in "not being subject to irrational monetary fines." *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 345 (Iowa 2015). Leaf argues that the risk of an erroneous deprivation is simply too great in the flawed administrative structure that is designed to obtain acquiescence in simply paying the fine.

Cedar Rapids properly concedes that Leaf has a property interest in the $75 fine it seeks to impose. Regardless of potential flaws in the administrative process, Cedar Rapids points out that the administrative process was optional and that Leaf, in fact, received a full-blown trial on the merits in small claims court that fully satisfied due process. When ordinary judicial process is available, according to Cedar Rapids, "that process is due process." *Lujan*, 532 U.S. at 197, 121 S. Ct. at 1451.

Cedar Rapids also defends the administrative process itself. It stresses that only $75 was at stake. Although the hearing officer in this case was the son of a police officer, Cedar Rapids asserts that fact alone does not establish bias sufficient to give rise to a due process violation. Cedar Rapids asserts that it would be unreasonable to require it to file municipal infraction cases in small claims court for ATE violations. Such a requirement, according to Cedar Rapids, would stretch its resources and impose an undue burden when many vehicle owners simply just want to pay the fine and be done with it. According to Cedar Rapids, a

free, optional administrative hearing is of benefit to itself and to vehicle owners.

2. *Discussion.* Leaf's case is in a significantly different posture than in *Behm*, ___ N.W.2d ___. Here, Leaf ultimately received a small claims hearing in district court. For a traffic ticket, the small claims process plainly satisfies due process. *See Lujan*, 532 U.S. at 197, 121 S. Ct. at 1451. As a result, she was not prejudiced by any procedural due process problem in the resolution of her case. *See Rector*, 348 F.3d at 942–43 (misleading instructions do not establish a procedural due process claim if they did not cause payment of fine); *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (holding courts must consider entire panoply of rights afforded in evaluating procedural due process claim). The district court properly ruled in favor of Cedar Rapids on this claim.

**VII. Unlawful Delegation Claims.**

Leaf alleges that pursuant to the ordinance and the underlying contract, Cedar Rapids has unlawfully delegated its police powers to Gatso, a private entity, in three ways. First, she claims that Cedar Rapids unlawfully delegated power to Gatso employees who made the initial screening determination that a vehicle violated the ATE ordinance. Second, she argues Gatso's mailing of notices of violation to vehicle owners on Cedar Rapids letterhead is an unlawful delegation. Third, Leaf argues that the appointment of persons as hearing officers, who are not a judges or magistrates, to hear administrative challenges amounted to an unlawful delegation of authority.[2]

Unlike in *Behm*—where Cedar Rapids had the burden of showing a lack of genuine issue of material fact in support of its motion for

---

[2]Leaf did not raise the question of unlawful delegation in connection with the calibration of the ATE system.

summary judgment—the burden at trial here was on Leaf to show that the ATE system unlawfully delegated governmental power to third parties.

Leaf failed to meet her burden at her small claims trial on the unlawful delegation issue related to the initial screening of violations. The evidence at trial did not show that Cedar Rapids unlawfully delegated to Gatso discretionary decision-making regarding determining which vehicles would be cited for violations of the ATE system. As Officer Caldwell testified, Cedar Rapids made the decision on whether to send Leaf a notice of violation and no one other than a police officer was able to approve the issuance of a notice. Further, Leaf did not offer any evidence to show that Gatso's actions in prescreening potential violations for the police department are anything other than ministerial in nature. As a result, Leaf is not entitled to prevail on her unlawful delegation theory.

Second, we find no evidence in the record to suggest that the sending of notices by Gatso after a law enforcement officer approved the violation was anything other than ministerial. Causing notices to be mailed after the city approves a violation involves no judgment. *See Behm,* ___ N.W.2d at ___.

Additionally, there was no evidence in the record to suggest that the volunteers who acted as hearing officers were serving in a private capacity. Leaf did not present any evidence to rebut that the hearing officers were acting as anything other than agents of Cedar Rapids seeking to informally resolve Leaf's objection to her citation. Under the ordinance, the volunteers exercised no judicial functions. For the reasons expressed in *Behm,* ___ N.W.2d at ___, we do not find an unlawful delegation here.

**VIII. Conclusion.**

For all of the above reasons, the judgment of the district court and the decision of the court of appeals in this matter is affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Hecht, J., who takes no part.