# IN THE SUPREME COURT OF IOWA

No. 22–0536

Submitted February 22, 2023—Filed June 9, 2023

**FRANCIS LIVINGOOD, CHRISTOPHER MAURY,** and **DANIEL ROBBINS,**

Appellants,

vs.

**CITY OF DES MOINES, IOWA,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Plaintiffs appeal from the district court order granting summary judgment in favor of a municipality on challenges to the municipality's use of the state income offset program to collect automated traffic citations not reduced to a legal judgment. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined. Mansfield, J., filed a concurring opinion.

Claire M. Diallo (argued), and James C. Larew of Larew Law Office, Iowa City, for appellants.

Michelle Mackel-Wiederanders (argued) and Luke DeSmet, Assistant City Attorneys, Des Moines, for appellee.

**McDONALD, Justice.**

Several vehicle owners brought this suit to challenge the City of Des Moines' use of the state's income offset program to collect automated traffic citation penalties not reduced to a judgment in a municipal infraction proceeding. In their petition, the vehicle owners contended the city's use of the income offset program: (1) was an unlawful property tax, (2) violated the statute of limitations, (3) amounted to an unconstitutional taking, (4) was preempted by state law, (5) violated their state constitutional right to due process of law, and (6) constituted unjust enrichment. The parties filed cross-motions for summary judgment. The district court denied the vehicle owners' motion for summary judgment and granted the city's motion for summary judgment. The vehicle owners timely filed this appeal. We affirm in part and reverse in part the judgment of the district court.

**I. The City's Automated Traffic Enforcement Program.**

We begin with an overview of the city's automated traffic enforcement (ATE) program as operated during the time relevant to this case. *See* Des Moines, Iowa, Mun. Code § 114-243 (2017).[1] Under the program, the city used fixed cameras to enforce certain municipal traffic laws. When a traffic camera detected a violation of the traffic laws, the camera took a photo or video and sent it to GATSO, a third-party vendor hired to administer the ATE program. GATSO ran the license plate information from the photo or video through Nlets, "a network

---

[1]Des Moines Municipal Code section 114-243 was amended in July 2017. For the purpose of this appeal, the parties agree that Ordinance No. 14,885, passed in September 2009, is the relevant ordinance.

communication center that connects over 55,000 law enforcement and judicial agencies in North America." Once GATSO determined the owner of the vehicle depicted, GATSO sent the information to the Des Moines Police Department for review. A police officer reviewed each photo or video and determined whether a violation should be pursued. If the officer determined a violation should be pursued, GATSO issued a notice of violation to the owner of the vehicle. *Id.* § 114-243(d)(1).

The notice of violation sent to the vehicle owner included a photo of the alleged violation, the name and badge number of the police officer who reviewed the information, the amount of the civil penalty, and a website where the vehicle owner could review a recording of the violation and pay the civil penalty. The notice provided that a vehicle owner had "the right to contest this violation in person at an administrative hearing or by mail if [the owner] reside[d] outside of the State of Iowa." The notice also provided, "Failure to pay the penalty or contest liability by the due date is an admission of liability and will result in this penalty being forwarded to collections or for filing in state district court."

The options provided to the vehicle owner in the notice did not track the city's ATE ordinance. The city's ordinance provided two options to a vehicle owner issued a notice of violation. *Id.* § 114-243(d)(1)–(2). First, the vehicle owner could voluntarily pay the penalty. *Id.* § 114-243(d)(1). Second, the vehicle owner could "dispute the citation by requesting an issuance of a municipal infraction citation by the police department." *Id.* § 114-243(d)(2).

Just as the notice of violation did not track the city's ordinance, the city did not follow its ordinance when enforcing the citation. At all times relevant to this proceeding, the municipal code provided, "If a recipient of an automated traffic citation does not pay the civil penalty by the stated due date or request a trial before a judge or magistrate, a municipal infraction citation will be issued to the recipient by certified mail from the police department." *Id.* § 114-243(d)(3). In other words, if an alleged violator did not pay the civil penalty and did not request the city issue a municipal infraction citation, the city was supposed to commence a municipal infraction proceeding.

Instead of adhering to its ordinance, the city commenced collection efforts outside court. If a vehicle owner did not pay or respond to the notice of violation within thirty days, GATSO sent a second notice. The second notice provided, "**Please be advised that you have exhausted all challenge options and this is a debt due and owing to the City of Des Moines. Failure to pay the fine immediately will subject you to formal collection procedures.**" Once the notice of violation was outstanding for more than sixty days, GATSO transferred the matter back to the city.

After the notice of violation was transferred back, the city availed itself of the state's income offset program to collect the civil penalty. The income offset program allows the department of administrative services to "establish a debt collection setoff procedure for collection of debts owed to [a] public agency." Iowa Code § 8A.504(1)(*a*) (2017). Generally speaking, the income offset program allows the department of administrative services to collect debts for public agencies by

offsetting the debts against any income tax refund owed to a taxpayer. The city entered into a memorandum of understanding with the department of administrative services to use the income offset program. The memorandum provided that only debts "in the form of a liquidated sum due, owing and payable" were eligible for placement in the program. The memorandum further provided that "[a]ll applicable remedies with regard to such a debt and claim must be exhausted . . . as a condition precedent for eligibility to participate in the offset program." It was the city's obligation to develop and maintain a system for reporting eligible debts to the department. It was also the city's obligation to ensure that the debts referred to the income offset program were "legally enforceable." Under the terms of the memorandum, "To establish enforceability the debt shall . . . have been reduced to a final judgment or final agency determination that is no longer subject to appeal, certiorari, or judicial review, or has been affirmed through appeal, certiorari, or judicial review."

Before placing an alleged debt with the department of administrative services for collection in the income offset program, the city sent a reminder postcard to the vehicle owner regarding the alleged debt. The reminder postcard stated that an owner could "request an informal hearing, pursuant to Municipal Code Section 3-27, regarding placement of this debt in the State of Iowa Income Offset Program" by writing the City of Des Moines finance director.

If the vehicle owner did not respond within thirty days of receiving the postcard, the status of the debt changed to "offset eligible." The city would then send to the department of administrative services the vehicle owner's name,

social security number, and the amount allegedly owed. Iowa Code § 8A.504(2)(*b*). If the department turned up a match, the department notified the city and held the entirety of the vehicle owner's income tax refund. The city would then send the vehicle owner a "notice of intent to offset." *Id.* § 8A.504(2)(*f*)(1). The notice provided, "If payment, or proof of payment, is not received in full within 15 days of the date of this Notice, your state income tax refund will be applied toward the balance of the citation(s)." The notice provided vehicle owners could contest the amount due by contacting the city finance department but "the only issue which will be reviewed is whether the amount due is correct under the Municipal Code." After receiving the notice, the vehicle owner could consent to the offset, pay the ATE penalty to the city directly and receive the full income tax refund, or contest the offset as set forth in the notice. *Id.* § 8A.504(2)(*h*).

**II. Background and Procedural Posture.**

**A. The Plaintiffs: Francis Livingood, Christopher Maury, and Daniel Robbins.** The plaintiffs in this case are Francis Livingood, Christopher Maury, and Daniel Robbins. Livingood's vehicle was recorded traveling seventy-one miles per hour in a sixty-mile-per-hour area on March 14, 2014. A notice of violation was sent to Livingood's address on March 20. The amount of the civil penalty was $65. A second notice of violation was sent on May 6. Livingood did not respond to either notice. In March 2015, the city sent a notice of intent to offset Livingood's $185 tax refund to obtain the $65 civil penalty he allegedly owed. Livingood's counsel contacted the city to dispute the offset. The city responded, "It is our understanding that the Iowa Department of Revenue has issued

Mr. Livingood's refund to him in its entirety. Since the funds have already been released to Mr. Livingood, there is no need for a hearing on the matter at this time." In October 2016, however, the city sent Livingood a postcard stating that if he did not pay the penalty by November, the ATE penalty would again be referred to the income offset program. The record in this case reflects that Livingood has not yet paid the penalty.

Maury's vehicle was recorded traveling seventy-one miles per hour in a sixty-mile-per-hour area on February 28, 2016. A notice of violation was sent on March 4. The ATE penalty was $65. A second notice of violation was sent on April 5. Maury did not respond to the notices. On September 23, the city sent Maury a postcard reminder of the debt and notice that the alleged debt was being sent to the income offset program. Maury did not respond. The following February, the city sent Maury notice of intent to offset, informing him that his $877 tax refund was being held due to nonpayment of the $65 penalty. Maury called and consented to the city collecting the ATE penalty from his tax refund.

Robbins's vehicle was recorded traveling seventy-one miles per hour in a sixty-mile-per-hour area on June 17, 2012. A notice of violation was sent on June 26, indicating Robbins owed a $65 ATE penalty. A second notice of violation was sent on August 3. The same vehicle was recorded traveling thirty-seven miles per hour in a twenty-five-mile-per-hour area on March 31, 2015. A notice of violation was sent on April 7, and a second on May 15. The penalty for the second violation was $65. On May 21, 2016, and December 14, the city sent postcard reminders regarding the debts and notice that the debts would be

referred to the income offset program. Robbins did not respond. On April 28, 2017, the city sent Robbins a notice of intent to offset his $205 tax refund to obtain the $130 allegedly owed. Shortly thereafter, $130 was offset from Robbins's state income tax refund and the remainder was remitted to him.

**B. District Court Proceedings.** The petition in this case was filed on February 9, 2017. The original plaintiffs were Jason Fett, Andrea Schramm, and Livingood. Significant motion practice took place after the filing of the initial petition, including the dismissal of plaintiffs Fett and Schramm and the addition of new plaintiffs.

The operative petition in this appeal is the third amended petition. In that petition, Livingood, Maury, and Robbins alleged: (1) the city's ATE ordinance was an unlawful property tax not authorized by the general assembly and in violation of Iowa Code section 364.3; (2) the city's collection efforts, including use of the income offset program, violated the statute of limitations set forth in Iowa Code section 614.1(1); (3) the city's use of the income offset program amounted to an unconstitutional taking in violation of article I, section 18 of the Iowa Constitution; (4) the city's use of the income offset program to collect a civil penalty not reduced to a judgment was preempted by Iowa Code section 364.22; (5) the city's use of the income offset program violated their rights to due process of law under article I, section 9 of the Iowa Constitution; and (6) the city's use of the income offset program to enforce automatic traffic citations not reduced to a judgment constituted unjust enrichment. They sought injunctive relief, declaratory relief, and damages, including attorney fees and costs for each claim.

The parties filed cross-motions for summary judgment on all claims. The district court denied the plaintiffs' motion, granted the city's motion, and dismissed all of the plaintiffs' claims. On appeal, the plaintiffs challenge the district court's rulings on each of their claims except the unlawful tax claim. We review the district court's summary judgment rulings for the correction of errors at law. *Kostoglanis v. Yates*, 956 N.W.2d 157, 158 (Iowa 2021).

### III. Statute of Limitations Claim.

The plaintiffs claim the city violated the statute of limitations by collecting or attempting to collect ATE penalties through the income offset program more than one year after the alleged traffic violation. *See* Iowa Code § 614.1(1) (providing actions to enforce municipal infractions must be brought within one year). The district court dismissed the claim on the ground the city was "not violating the statute of limitations because [it was] not bringing a court action." We conclude the district court did not err in dismissing this claim.

For the reasons explained in *Stogdill v. City of Windsor Heights*, ___ N.W.2d ___, ___ (Iowa 2023), filed today, the statute of limitations is inapplicable to the city's use of the income offset program because the statute of limitations does not apply to collection efforts made outside of court proceedings. *See id.* at ___ ("The statute of limitations is wholly inapplicable to the city's out-of-court collection efforts."). In addition, "The statute of limitations is not a cause of action; the statute of limitations is an affirmative defense to a cause of action." *Id.* at ___. A party cannot "violate" the statute of limitations. *See id.* The plaintiffs' statute of limitations claim fails as a matter of law.

**IV. Unconstitutional Taking Claim.**

Livingood, Maury, and Robbins claim the city's use of the income offset program amounts to an unconstitutional taking under the Iowa Constitution. Article I, section 18 of the Iowa Constitution provides, "Private property shall not be taken for public use without just compensation first being made."

> [This court has] set forth the following analysis concerning takings claims: (1) Is there a constitutionally protected private property interest at stake? (2) Has this private property interest been "taken" by the government for public use? and (3) If the protected property interest has been taken, has just compensation been paid to the owner?

*Kelley v. Story Cnty. Sheriff*, 611 N.W.2d 475, 479 (Iowa 2000) (en banc). Plaintiffs contend that the city is taking their money for public use and that the city must pay just compensation by returning the same money. The district court dismissed this claim on the ground that no taking occurs when the city exercises its police power to enforce penalties for violation of its law. We affirm the district court's dismissal of this claim.

The threshold question presented is whether state income tax refunds are constitutionally protected private property. *See id.* Takings claims typically relate to real property or chattels and not money. *See, e.g., Kelley*, 611 N.W.2d at 479–83 (arguing destruction of property by police during arrest amounts to unconstitutional taking); *Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 313–14 (Iowa 1998) (en banc) (arguing designation of land as "agricultural area" amounts to unconstitutional taking). Thus, "[t]akings are generally effected through the power of eminent domain" or less formal regulatory takings related to real or personal property. *Lafaye v. City of New Orleans*, 35 F.4th 940, 943

(5th Cir. 2022). Nonetheless, there is some authority standing for the proposition that money can be property within the meaning of the takings clause in certain contexts. *See, e.g.*, *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 239–40 (2003) (holding that state IOLTA programs requiring earned interest be donated for legal services effected "taking" of property); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163–65 (1980) (holding statute allowing clerk of court to keep all interest earned on interpleaded funds effected "taking" without just compensation); *McCarthy v. City of Cleveland*, 626 F.3d 280, 284–87 (6th Cir. 2010) (discussing issue).

With that background, we conclude the income tax refunds at issue in this case were constitutionally protected private property. The tax refunds were due and owing to the plaintiffs, and the treasurer was required to pay them. Iowa Code § 422.74. The conclusion that state income tax refunds are constitutionally protected private property is consistent with our controlling authorities and other persuasive authorities. *See Hagge v. Iowa Dep't of Revenue & Fin.*, 539 N.W.2d 148, 154 (Iowa 1995) (holding state tax refund "was the individual property or money of each taxpayer" and that district court lacked authority to instruct withholding percentage of refund to pay attorney fees); *In re Marriage of Huffman*, 453 N.W.2d 246, 247 (Iowa Ct. App. 1990) (discussing state income tax refund as marital property subject to division); *see also Kokoszka v. Belford*, 417 U.S. 642, 648 (1974) (holding income tax refund was property within meaning of bankruptcy code); *U.S. Tr. v. Klages* (*In re Klages*), 373 B.R. 902,

906–08 (Bankr. N.D. Iowa 2007) (holding tax refund was property of debtor's estate).

Although we conclude the plaintiffs' income tax refunds were constitutionally protected property, we cannot conclude that the city's actions here constituted a "taking" for "public use" within the meaning of article I, section 18. "[T]he taking of money is different . . . from the taking of real or personal property." *San Remo Hotel L.P. v. City & County of San Francisco*, 41 P.3d 87, 106 (Cal. 2002) (quoting *Ehrlich v. City of Culver City*, 911 P.2d 429, 454–55 (Cal. 1996)). "[T]he principles of takings law that apply to real property do not apply in the same manner to statutes imposing monetary liability." *Branch v. United States*, 69 F.3d 1571, 1576 (Fed. Cir. 1995). The purpose of the takings clause is "to bar the Government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Tyler v. Hennepin Cnty.*, ___ U.S. ___ (2023) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

Here, the city is not taking property for a public use. It is not asking the plaintiffs to bear a burden that should be borne by the public as a whole. Instead, the city is collecting penalties allegedly owed for violation of its laws. The government's collection of money for the payment of fines in the exercise of its police power is not a "taking" for "public use" and does not implicate the takings clause. *United States v. Droganes*, 728 F.3d 580, 591 (6th Cir. 2013) ("[T]he [g]overnment's seizure and retention of property under its police power does not constitute a 'public use.' " (quoting *Innovair Aviation Ltd. v. United States*,

632 F.3d 1336, 1341 (Fed. Cir. 2011))); *Swisher Intern., Inc. v. Schafer,* 550 F.3d 1046, 1054 (11th Cir. 2008) ("[T]he takings analysis is not an appropriate analysis for the constitutional evaluation of an obligation . . . merely to pay money."); *Walker v. City of Chicago,* No. 20–cv–01379, 2022 WL 17487813, at *5 (N.D. Ill. Dec. 6, 2022) (stating there was no constitutional taking where funds were not taken "for a public purpose but instead to satisfy the owners' debts"); *State v. Chesnel,* 25 A.3d 946, 950 n.2 (Me. 2011) ("Nor did the collection of funds from the prison account amount to an unconstitutional taking because the funds were not 'taken for public uses,' but rather were collected to satisfy Chesnel's personal obligation to pay court fines." (quoting Me. Const. art. I, § 21)); *Smith v. Or. Gov't Ethics Comm'n,* 564 P.2d 1368 (Or. Ct. App. 1977) ("[S]uffice it to state the obvious: A fine or penalty . . . does not constitute a 'taking' for which compensation need be provided.").

Whether the city acted lawfully or unlawfully in exercising this power is not material to the takings analysis. "[A]n exaction of money that is completely unlawful, whether compensated or not, is not a taking." *Lafaye,* 35 F.4th at 943. A victim of lawless government action can seek compensation or other relief, as the plaintiffs do here, but the city's use of the income offset program to collect an alleged debt is not a constitutional taking. The district court correctly dismissed the plaintiffs' taking claim.

**V. Preemption Claim.**

Plaintiffs next claim the city's use of the income offset program is preempted by state law. Specifically, plaintiffs contend Iowa Code section 364.22

requires that the city pursue a municipal infraction and obtain a judgment before an ATE penalty can be involuntarily collected. The district court held the city's use of the income offset program to collect debts not yet reduced to a judgment was authorized by Iowa Code section 8A.504 and was thus not preempted by state law. For the reasons expressed below, we affirm in part and reverse in part the district's ruling on this claim.

**A. The Law of Preemption, Generally.** We begin our analysis with an overview of the law of preemption with respect to state and local laws. "In 1968, the Iowa Constitution was amended to provide municipal governments with limited powers of home rule." *City of Davenport v. Seymour*, 755 N.W.2d 533, 537–38 (Iowa 2008) (citing Iowa Const. art. III, § 38A). Under home rule authority, the legislature "retains the unfettered power to prohibit a municipality from exercising police powers, even over matters traditionally thought to involve local affairs." *Id.* at 538. On the other hand, a municipality may act without express legislative approval so long as its laws are not inconsistent with the laws of the general assembly. *Id.* "An ordinance is inconsistent with a law of the general assembly and, therefore, preempted by it, when the ordinance prohibits an act permitted by a statute or permits an act prohibited by a statute." *City of Clinton v. Sheridan*, 530 N.W.2d 690, 691 (Iowa 1995) (en banc).

Our cases "have recognized three types of preemption. The first type, generally known as express preemption, applies where the legislature has specifically prohibited local action in a given area." *Seymour*, 755 N.W.2d at 538. The second type of preemption is known as conflict preemption. *See id.* at 539.

Conflict preemption occurs when an "ordinance cannot exist harmoniously with a state statute because the ordinance is diametrically in opposition to it." *Id.* at 538. The third type of preemption is known as field preemption. *Id.* at 539. This is a "narrow doctrine." *Id.* Field preemption occurs "when the legislature has so covered a subject by statute as to demonstrate a legislative intent that regulation in the field is preempted by state law." *Id.* "In order to invoke the doctrine of field preemption, there must be some clear expression of legislative intent to preempt a field from regulation by local authorities, or a statement of the legislature's desire to have uniform regulations statewide." *Id.*

At issue in this case is conflict preemption. "The conflict preemption doctrine is applicable only where the question presented is whether the *enactments* of two governments can be reconciled and given legal effect." *Cedar Rapids v. Leaf*, No. 16–0435, 2017 WL 706305, at *8 (Iowa Ct. App. Feb. 22, 2017), *aff'd, City of Cedar Rapids v. Leaf*, 923 N.W.2d 184 (Iowa 2018). Properly understood, conflict preemption addresses the question of whether a state law conflicts with a municipality's law and thus preempts it. The doctrine of conflict preemption does not address and is not applicable where the question presented is whether a municipality's actions violate state law or its own law. *Id.* ("The doctrine of conflict preemption is not implicated when the question presented is whether the inferior government, in exercising its executive power to enforce a particular enactment . . . , is in violation of an enactment of a superior government.").

In conducting a conflict preemption analysis, "we presume that the municipal ordinance is valid." *Seymour*, 755 N.W.2d at 539. We strive to interpret state law and municipal law in a manner that renders them harmonious. *Id.* We will not find an ordinance in conflict with state law unless the ordinance is "irreconcilable" with state law. *Id.* "The cumulative result of these principles is that for implied preemption to occur based on conflict with state law, the conflict must be obvious, unavoidable, and not a matter of reasonable debate." *Id.*

**B. Preemption as Applied to the City's Ordinances.** In analyzing this conflict preemption claim, we start with the relevant state law. Iowa Code section 364.22 relates to municipal infractions. As relevant here, it sets forth the procedures for municipal infraction proceedings:

> 6. In municipal infraction proceedings:
>
> *a.* The matter shall be tried before a magistrate, a district associate judge, or a district judge in the same manner as a small claim. The matter shall only be tried before a judge in district court if the total amount of civil penalties assessed exceeds the jurisdictional amount for small claims set forth in section 631.1.
>
> *b.* The city has the burden of proof that the municipal infraction occurred and that the defendant committed the infraction. The proof shall be by clear, satisfactory, and convincing evidence.
>
> *c.* The court shall ensure that the defendant has received a copy of the charges and that the defendant understands the charges. The defendant may question all witnesses who appear for the city and produce evidence or witnesses on the defendant's behalf.
>
> *d.* The defendant may be represented by counsel of the defendant's own selection and at the defendant's own expense.
>
> *e.* The defendant may answer by admitting or denying the infraction.

   *f.* If a municipal infraction is proven the court shall enter a judgment against the defendant. If the infraction is not proven, the court shall dismiss it.

Iowa Code § 364.22(6).

This court has had several occasions to discuss the interplay between section 364.22 and ATE programs. We have held that section 364.22 does not preclude a city from collecting a voluntary payment of ATE penalties without first filing a municipal infraction. *Rhoden v. City of Davenport*, 757 N.W.2d 239, 241 (Iowa 2008). We have held that Iowa Code section 364.22 does not preclude a municipality from offering an informal administrative hearing in addition to what is required under section 364.22. *Leaf*, 923 N.W.2d at 198. In *Weizberg v. City of Des Moines*, however, we interpreted section 364.22 to be the exclusive means by which a municipality could enforce an automated traffic citation involuntarily. 923 N.W.2d 200, 220 (Iowa 2018) ("[T]o the extent a municipality seeks to assert the coercive power of government to enforce payment of a penalty for a municipal infraction, a municipality must pursue a municipal infraction under Iowa Code section 364.22.").

The city disagrees and contends that the collection of ATE penalties through use of the income offset program is an alternative means of involuntary enforcement that is explicitly authorized by statute, namely Iowa Code section 8A.504. Section 8A.504 provides that the department of administrative services "shall establish and maintain a procedure to set off against any claim owed to a person by a public agency *any liability* of that person . . . or such *other qualifying debt*" owed to a public agency. Iowa Code § 8A.504(2) (emphasis

added). The city contends the ATE penalties fall within the meaning of "any liability" and "other qualifying debt." The city also relies on the department's administrative rule defining a "liability," "debt," or "qualifying debt" as "any liquidated sum due, owing, and payable by a debtor to a public agency . . . [that] may be accrued through . . . any legal theory regardless of whether there is an outstanding judgment for that sum." Iowa Admin. Code r. 11—40.1. In the city's view, these two provisions create an alternative means to enforce the penalties.

We are unpersuaded by the city's argument. Citing Iowa Code section 8A.504 as authority to collect ATE penalties merely begs the question. Iowa Code section 8A.504 authorizes a municipality to refer to the income offset program a liability "due, owing, and payable," but neither the statute nor the administrative rule defines when a liability becomes "due, owing, and payable." But the relevant question here is exactly that: When does an ATE penalty become a liability or debt due, owing, and payable? On this question, we could not have been clearer in our recent opinions regarding ATE programs. In *Behm v. City of Cedar Rapids*, we recognized that "[u]nder Iowa Code section 364.22, no liability arises until the city takes the affirmative step of filing an enforcement action in district court and obtains a judgment against the defendant." 922 N.W.2d 524, 562 (Iowa 2019). There is no liability or debt due, owing, and payable in the absence of a judgment from the district court. *Id.* at 564–65 (holding that "no liability of any kind attaches to a vehicle owner without the filing of a municipal infraction" and stating relevant statutes do "not provide for any liability to arise until the [municipality] takes the affirmative step of filing an enforcement action

in district court and obtains a judgment against the defendant"). We reiterated this point in *Weizberg*, stating "that no enforceable obligation will arise unless the [municipality] files a municipal infraction in small claims court and obtains a judgment." 923 N.W.2d at 215 n.4. The city also ignores another provision of the administrative code that provides, "Public agencies may only place debts in the offset program if the debts are legally enforceable." Iowa Admin. Code r. 11—40.3(3). Under section 364.22, as interpreted in *Behm* and *Weizberg*, these alleged debts were not legally enforceable.

None of this should come as a surprise. It has long been the law of this state that municipal infraction penalties cannot be enforced absent judicial process. We first addressed this issue in 1856 in *Gosselink v. Campbell*, 4 Iowa (Clarke) 296 (1856). In that case, the city passed an ordinance that allowed it to seize and sell hogs to pay a civil penalty for public nuisance infractions without first initiating a court proceeding. *Id.* at 301. A farmer challenged the collection of the fine without judicial process. We held the city ordinance was "defective" and not enforceable "upon the common ground that [a] fine cannot be . . . enforced without trial and adjudication." *Id.* We reaffirmed this principle a century later in *Marquart v. Maucker*, 215 N.W.2d 278 (Iowa 1974). There we explained that fines and penalties "may be legally imposed or assessed only by a lawful tribunal." *Id.* at 282.

The fact that section 8A.504 does not provide an alternative method to enforce an ATE penalty does not completely resolve the conflict preemption issue. We still must determine whether Iowa Code section 364.22, as interpreted in

*Behm* and *Weizberg*, conflicts with and preempts the city's ATE ordinance. Until 2017, the ordinance provided, in relevant part:

> (1) [A red light or speeding violation] shall be considered for a notice of violation for which a civil penalty in the amount specified in the schedule of administrative penalties adopted by city council by resolution shall be imposed, payable to the city of Des Moines at the city's finance department or a designee.

> (2) A recipient of an automated traffic citation may dispute the citation by requesting an issuance of a municipal infraction citation by the police department. Such request will result in a required court appearance by the recipient and in the scheduling of a trial before a judge or magistrate at the Polk County Courthouse. The issuance of a municipal infraction citation will cause the imposition of state mandated court costs to be added to the amount of the violation in the event of a guilty finding by the court.

> (3) If a recipient of an automated traffic citation does not pay the civil penalty by the stated due date or request a trial before a judge or magistrate, a municipal infraction citation will be issued to the recipient by certified mail from the police department. Said municipal infraction citation will result in a mandatory court appearance by the recipient as well as imposition of state mandated court costs if a finding of guilty is made by the court.

Des Moines, Iowa, Mun. Code § 114-243(d).

We cannot conclude that Iowa Code section 364.22 was irreconcilable with this ordinance and preempted it. The ordinance provided that the recipient of a notice of violation could voluntarily pay the penalty, which we said does not conflict with Iowa Code section 364.22. *Rhoden*, 757 N.W.2d at 241. The ordinance also provided that the recipient of the notice could request the city proceed with a municipal infraction proceeding, which we said section 364.22 allowed. *Behm*, 922 N.W.2d at 569. Further, the ordinance stated that if the recipient of the notice did not pay the citation and did not request the city file a municipal infraction, then the city would file a municipal infraction. This, too,

complied with Iowa Code section 364.22, as interpreted in *Behm* and *Weizberg*. The problem with the city's ATE ordinance was not that it was irreconcilable with section 364.22, it was that the city did not comply with its own ordinance and file a municipal infraction proceeding when the vehicle owner failed to pay the penalty or request the city proceed with a municipal infraction. There is no conflict preemption with respect to Des Moines Municipal Code section 114-243—the city just acted unlawfully in violation of its own ordinance.

There are other relevant ordinances here as well. The city has adopted an ordinance authorizing its participation in the state income offset program. *See* Des Moines, Iowa, Mun. Code § 3-26 to -29. Pursuant to section 3-27, the city shall provide notice to a debtor "that the debt will be placed in the offset program and that the debtor shall have an informal opportunity to challenge such placement by filing the challenge with the finance director within ten days of the date of notice." *Id.* 3-27(a). Although we have concluded that an ATE penalty is not a liability or debt due, owing, and payable until reduced to a judgment following a municipal infraction proceeding, this ordinance is not irreconcilable with Iowa Code section 364.22. The ordinance, on its face, provides an alleged debtor the opportunity to contest placement of an alleged debt in the program. With respect to alleged ATE penalties, an alleged violator must be allowed to contest placement on the ground that no debt is in fact due, owing, and payable for failure to obtain a judgment, otherwise the ordinance would be preempted. While the city's referral of the civil penalty to the income offset program is improper because no liability or debt is in fact due, owing, or payable in the

absence of a municipal infraction judgment, the opportunity provided to contest placement in the income offset program makes the ordinance compatible with Iowa Code section 364.22.

We reach a different conclusion with respect to Des Moines Municipal Code section 3-29. When the department notifies the city of a potential offset, the city must mail notice to the alleged debtor and provide the debtor with an opportunity for a hearing. *Id.* § 3-28. At the hearing, the vehicle owner is not allowed to challenge whether the penalty is due, owing, and payable. Instead, the ordinance provides that if the vehicle owner did not request an administrative hearing or a municipal infraction proceeding, then the "notice of violation is deemed a debt subject to placement in the Des Moines Debt Offset Program." *Id.* § 3-29. This ordinance is in direct conflict with Iowa Code section 364.22, as interpreted in *Behm* and *Weizberg.* As noted above, those cases provide that no enforceable liability or debt arises "until the city takes the affirmative step of filing an enforcement action in district court and obtains a judgment against the defendant." *Behm*, 922 N.W.2d at 562; *see also Weizberg*, 923 N.W.2d at 215 n.4 ("[N]o enforceable obligation will arise unless the [municipality] files a municipal infraction in small claims court and obtains a judgment."). Des Moines Municipal Code section 3-29's declaration that the civil penalty is a debt due, owing, and payable without a municipal infraction judgment is directly contrary to and irreconcilable with Iowa Code section 364.22. *Compare* Iowa Code § 364.22(6) (providing procedure for establishing liability pursuant to municipal infraction),

*with* Des Moines, Iowa, Mun. Code § 3-29 (authorizing establishment of liability contrary to Iowa Code § 364.22).

**C. Disposition of Each Plaintiff's Respective Preemption Claim.** Having concluded the city's ordinances are preempted, in part, by Iowa Code section 364.22, we must address the disposition of each of the plaintiffs' claims.

Livingood, Maury, and Robbins have styled their preemption claim as a cause of action. They seek damages, declaratory relief, and injunctive relief. Damages are an inherently retrospective form of relief meant to compensate for past wrongs already committed. Whereas declaratory and injunctive relief are inherently prospective forms of relief meant to prevent future wrongs. As we previously explained:

> Declaratory actions differ from nearly all others, such as tort, contract, and most special actions. Typically, parties seek court judgments to resolve consequences of past acts or conduct. The view of most court proceedings is retrospective. The view for declaratory relief is prospective.

*UAW v. Iowa Dep't of Workforce Dev.*, No. 00–2112, 2002 WL 1285965, at *2 (Iowa June 12, 2002) (per curiam); *Melsha v. Trib. Pub. Co. of Cedar Rapids*, 51 N.W.2d 425, 427 (Iowa 1952) ("The general purpose of a declaratory judgment is to provide a speedy remedy for adjudication of legal rights before there has been an invasion thereof, but generally this action is only maintainable where it will accomplish some useful purpose.").

Damages are not available for the plaintiffs' "claim" of preemption. Preemption is not a cause of action; preemption is an affirmative defense. *See Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 639, 641 (Iowa 2019) (stating

preemption is an affirmative defense); *Martin v. Crook*, No. 08–1711, 2009 WL 2392077, at *2 (Iowa Ct. App. Aug. 6, 2009) (preemption used as affirmative defense); *Leahy v. Deere & Co.*, No. 99–191, 2000 WL 700889, at *3 (Iowa Ct App. May 31, 2000) (explaining conflict preemption is an affirmative defense); *see also Thermotek, Inc. v. Orthoflex, Inc*, No. 3:11–CV–0870–D, 3:10–CV–2618–D, 2016 WL 4678888, at *4 (N.D. Tex. Sept. 7, 2016) (stating preemption is an affirmative defense that can be waived); *Lovegrove v. Ocwen Loan Serv., LLC*, No. 7:14cv00329, 2015 WL 5042913, at *3 (W.D. Va. Aug. 26, 2015) (stating conflict preemption is an affirmative defense); *Fostill Lake Builders, LLC v. Tudor Ins.*, 338 S.W.3d 336, 344 (Mo. Ct. App. 2011) (same). Because preemption is not a cause of action but an affirmative defense that must be raised in the appropriate proceeding and at the appropriate time, it cannot support a claim for damages and other monetary relief for past wrongs. The district court thus did not err in dismissing this claim to the extent the plaintiffs seek monetary relief for their claim of preemption.

With respect to declaratory and injunctive relief, these are not available to plaintiffs Maury and Robbins. Maury and Robbins have already paid the civil penalties. As will be discussed in more detail below, each had notice and an opportunity to contest the referral of their penalties to the income offset program and to present their preemption defense prior to offset, but neither requested a hearing. Generally, "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Just. Network Inc. v. Craighead County,*

931 F.3d 753, 764 (8th Cir. 2019) (quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)). And, "[g]enerally, rights already lost and wrongs already committed are not subject to injunctive relief." *Engel v. Vernon*, 215 N.W.2d 506, 516 (Iowa 1974). The district court thus did not err in dismissing Robbins and Maury's respective claims of preemption in their entirety because neither is entitled to monetary, declaratory, or injunctive relief.

That leaves only Livingood's claim for declaratory and injunctive relief. In *Iowa Ass'n of Business & Industry v. City of Waterloo*, we held that a local ordinance regulating employment practices was preempted, in part, by state law. 961 N.W.2d 465, 477–78 (Iowa 2021). Rather than holding the entire ordinance preempted and without effect, we held that only the conflicting provisions should be severed from the ordinance and given no legal effect. *Id.* at 478. We concluded that remedy was appropriate, in part, because the ordinance had a severability clause. *Id.* at 477–78.

As in *Iowa Ass'n of Business & Industry*, the city has a general severability provision. It provides that if any decision finds part of the code is invalid, "such decision shall not affect the validity of the remaining portions of this Code." Des Moines, Iowa, Mun. Code § 1-16. Accordingly, we hold that those parts of Des Moines Municipal Code section 3-29 that (1) prohibit the recipient of a notice of intent to offset from contesting the offset and (2) deem an ATE penalty not reduced to judgment a debt "due, owing, and payable" are in conflict with, preempted by, and rendered invalid by Iowa Code section 364.22. *See Xenia Rural Water Dist. v. City of Johnston*, 959 N.W.2d 113, 124 (Iowa 2021)

("Conflicting language in a county ordinance or resolution must yield to the controlling state statute.").

Livingood shall be entitled to assert this defense as to any claim of offset. The district court erred in denying his motion for summary judgment and in granting the city's motion for summary judgment on this claim. We reverse the judgment of the district court on this issue. On remand, the district court shall enter the appropriate declaratory and injunctive relief in favor of Livingood.

**VI. Procedural Due Process Claim.**

The plaintiffs next contend the district court erred in dismissing their claim that the city's attempts to enforce the civil penalties violated their right to procedural due process under article I, section 9 of the Iowa Constitution. The district court dismissed the plaintiffs' claim on the ground the civil penalties were nominal and the plaintiffs were provided with multiple notices and opportunities to protect those nominal interests. We affirm the district court's ruling on this issue.

"A party claiming a violation of procedural due process must first show an impairment of an interest in life, liberty, or property by government action." *Behm*, 922 N.W.2d at 566. "Once a protected interest has been established, the next question is what procedural minima must be provided before the government may deprive the complaining party of the protected interest." *Id.* "Ordinarily, the procedural minima include two components—notice and an opportunity to be heard on the issue." *Id.*

Here, the plaintiffs were provided with multiple notices and opportunities to be heard. They were provided with the original notice of violation and afforded the opportunity to request a hearing. They were provided with a second notice regarding the civil penalty. None of the plaintiffs took any action on either of these notices. Each of the plaintiffs was provided notice of the city's intent to transfer the matter to the income offset program and an opportunity to challenge the transfer. None of the plaintiffs took advantage of that opportunity. Finally, each of the plaintiffs was provided with notice of an intent to offset. The plaintiffs' failure to seek a hearing precludes their procedural due process claim.

As in *Stogdill*, the plaintiffs contend that even though they did not avail themselves of these opportunities, the city nonetheless violated their rights to due process by referring the ATE penalties to the income offset program without first reducing the penalties to a judgment in a municipal infraction proceeding pursuant to Iowa Code section 364.22. We rejected this argument in *Stogdill*, ___ N.W.2d at ___, and we reject it here as well. The government's failure to comply with a statute or ordinance does not necessarily establish a due process violation. *See Stogdill*, ___ N.W.2d at ___; *Weizberg*, 923 N.W.2d at 214 ("The failure to follow such a procedure or ordinance cannot give rise, in and of itself, to a due process violation."); *Behm*, 922 N.W.2d at 568 ("A mere violation of a statute does not give rise to a due process violation . . . ."); *Stuart v. City of Dubuque Zoning Bd. of Adjustment*, No. 19–1688, 2020 WL 6484041, at *4 (Iowa Ct. App. Nov. 4, 2020) (affirming dismissal of due process claim premised on Board's failure to follow procedures in ordinance where plaintiffs nonetheless

received notice and an opportunity to be heard). "[I]n all cases, the focus of the analysis must be on the critical question of whether the process that was provided comported with the basic requirements of notice and an opportunity to be heard." *Weizberg*, 923 N.W.2d at 214. Here, the parties were given multiple notices and multiple opportunities to be heard, and they did not take advantage of those opportunities. We affirm the judgment of the district court.

**VII. Unjust Enrichment Claim.**

This brings us to the plaintiffs' final claim—unjust enrichment. The district court dismissed this claim on the ground the city's conduct was not in any way unlawful. We affirm in part and reverse in part the judgment of the district court.

The concept of unjust enrichment is not a judicial remedy to correct perceived injustices, unfairness, or inequities in a broad sense. Rather, the doctrine involves a "narrower set of circumstances giving rise to what might more appropriately be called unjustified enrichment." Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. *b*, at 4 (Am. L. Inst. 2011); *see also Rilea v. State*, 959 N.W.2d 392, 394 (Iowa 2021) ("The circumstances giving rise to an unjust enrichment cause of action might more appropriately be labeled '*unjustified enrichment*' seeing as our focus centers on whether there has been a 'transfer of a benefit without adequate legal ground.' " (quoting Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. *b*, at 6)). In the technical sense, "[u]njustified enrichment is enrichment that lacks an adequate legal basis." Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. *b*, at 4. "The elements of unjust enrichment are (1) enrichment of the defendant, (2) at

the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." *Behm*, 922 N.W.2d at 577.

The city concedes the first two elements of unjust enrichment are met, but it disputes the third. The city argued in the district court and argues on appeal that its administration of the ATE program was entirely lawful. As set forth above, we disagree with the city's assertion that its conduct was entirely lawful. First, the city did not follow its own ordinance in collecting ATE penalties. The text of the ordinance states "a municipal infraction citation *will be issued*" if a vehicle owner fails to pay the citation or fails to request the city proceed with a municipal infraction proceeding. Des Moines, Iowa, Mun. Code § 114-243(d)(3) (emphasis added). The city did not file a municipal infraction proceeding as required by its own law, however, and instead proceeded to extrajudicial collection efforts. Second, the ATE penalties not yet reduced to a judgment were not liabilities or debts due, owing, and payable when the city referred them to the income offset program. *See Weizberg*, 923 N.W.2d at 220; *Behm*, 922 N.W.2d at 561. It was the city's obligation—pursuant to statute, the administrative code, and its memorandum of understanding with the department of administrative services—to ensure that the referred accounts were eligible for inclusion in the income offset program. The city failed to comply with the law and referred penalties that were not legally enforceable to the income offset program.

The city also contends the plaintiffs' claim for unjust enrichment fails as a matter of law because none of the plaintiffs dispute that they committed the underlying traffic violations. The city is confusing two separate and distinct

issues. For the purposes of this claim, it is immaterial whether the recipient of the citation in fact violated the traffic ordinance. Iowa Code section 364.22, as interpreted in *Behm* and *Weizberg*, requires that the city obtain a judgment in a municipal infraction proceeding to enforce the penalty against the owner. *Weizberg*, 923 N.W.2d at 220; *Behm*, 922 N.W.2d at 561. It is the legality of the extrajudicial collection effort—specifically, the holding of the plaintiffs' income tax refund—that is at issue and not whether the plaintiffs committed the underlying offense. *Cf. Rilea*, 959 N.W.2d at 394 ("But the money Riley paid was owed to the State as court debt because Rilea was adjudicated guilty in state district court. . . . The fine is separate from the underlying citation. The payment Rilea made was a product of a court's adjudication." (citation omitted)).

On the relevant point, the Restatement (Third) provides that the payment of erroneously or illegally assessed taxes may give "the taxpayer a claim in restitution against the taxing authority as necessary to prevent unjust enrichment." Restatement (Third) of Restitution & Unjust Enrichment § 19(1), at 259. The collection of ATE penalties constitutes a "tax" within the meaning of the Restatement. *Id.* (" 'Tax' within the meaning of this section includes every form of imposition or assessment collected under color of public authority."). We thus conclude the district court erred in part in granting the city's motion for summary judgment. The district court did not err with respect to Livingood, who has not paid any ATE penalty and thus has not suffered any injury. The district court erred with respect to Maury and Robbins, both of whom paid the ATE penalty. *See Kragnes v. City of Des Moines*, 810 N.W.2d 492, 513 (Iowa 2012)

(affirming unjust enrichment award for illegal collection of franchise fees and stating that "the most fair remedy in this case is the refund which will, to the extent possible, refund to members of the plaintiff class the excess fees extracted from them and restore the parties to the status quo ante").

Although we conclude the district court erred in granting the city's motion for summary judgment, we cannot conclude that plaintiffs Maury and Robbins were entitled to judgment as a matter of law. The only issue presented to the district court with respect to unjust enrichment was the legality of the city's conduct. The parties did not present to the district court, and the district court did not determine, whether there are any defenses to the claim of unjust enrichment and whether there are any disputed issues of material fact necessitating trial on this claim. For example, the Restatement provides that if restitution with respect to an erroneously or illegally collected tax "would disrupt orderly fiscal administration or result in severe public hardship, the court may on that account limit the relief" available. Restatement (Third) of Restitution & Unjust Enrichment § 19(2), at 259; *see also Kragnes*, 810 N.W.2d at 512 (discussing rule). And there are more traditional defenses, including, but not limited to, voluntary payment, consent, waiver, estoppel, limitations, laches, etc. *See, e.g., Hug v. Am. Traffic Sols., Inc.*, No. 4:14CV00138 ERW, 2014 WL 2611832, at *7 (E.D. Mo. June 11, 2014) ("The voluntary payment doctrine is an affirmative defense to the claim of unjust enrichment."); *Damon v. City of Kansas City*, 419 S.W.3d 162, 192–94 (Mo. Ct. App. 2013) (discussing unjust enrichment and voluntary payment doctrine with respect to ATE penalties); *Smith v. City of*

*St. Louis*, 409 S.W.3d 404, 419–21 (Mo. Ct. App. 2013) (same). We express no opinion on any of these issues except to say that on this record, the possibility of defenses and disputed issues of material fact preclude the entry of judgment as a matter of law for plaintiffs Maury and Robbins. *See, e.g., Weizberg*, 923 N.W.2d at 221 ("Under the circumstances, we think the best option now is to vacate the district court ruling regarding unjust enrichment with respect to the City and remand the matter to the district court for further consideration in light of our holdings in this case.").

**VIII. Disposition.**

We affirm the district court's judgment in part and reverse in part. We affirm the district court's dismissal of the plaintiffs' claim that the city violated the statute of limitations. We affirm the district court's dismissal of the plaintiffs' claim that the city's use of the income offset program amounts to an unconstitutional taking. We affirm the district court's dismissal of the plaintiffs' claim for violation of their right to procedural due process. We affirm the district court's dismissal of Robbins and Maury's preemption claims in their entirety because they are not entitled to any form of relief on this claim. We affirm the district court's dismissal of Livingood's preemption claim to the extent he seeks damages because preemption is not a cause of action supporting a damages claim, but we reverse the district court's dismissal of Livingood's preemption claim with respect to his requests for declaratory and injunctive relief. We affirm the district court's dismissal of Livingood's claim for unjust enrichment because he has not paid any automated traffic citation penalty. We reverse the district

court's grant of summary judgment in favor of the city with respect to Robbins and Maury's claim for unjust enrichment. We remand this matter for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur and Mansfield, J., files a concurrence.

**MANSFIELD, Justice (concurring).**

I join the court's thorough opinion. In particular, I agree that we have held in prior automated traffic enforcement (ATE) cases that "no liability arises until the city takes the affirmative step of filing an enforcement action in district court and obtains a judgment against the defendant." *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 562 (Iowa 2019); *see also Weizberg v. City of Des Moines*, 923 N.W.2d 200, 208, 215 n.4 (Iowa 2018). While the City of Des Moines could structure the situation so that a vehicle owner who requests an administrative hearing waives their right to a municipal infraction hearing, they have not done so here. *See Behm*, 922 N.W.2d at 579–80 (Mansfield, J., concurring in part and dissenting in part); *Weizberg*, 923 N.W.2d at 222 (Mansfield, J., concurring in part and dissenting in part). And, in any event, neither Francis Livingood, Christopher Maury, nor Daniel Robbins went through the administrative process; all of them simply ignored the initial notices of ATE violations. As the court recognizes, it was improper for the city to have a general policy of referring individuals who had not paid ATE citations to the income tax program without going through the municipal infraction process in Iowa Code section 364.22.

I also agree with the court that Des Moines Municipal Code section 3-29 is preempted in part by state law. Under state law, participating public agencies such as the city that wish to refer a liability to the state's offset program must provide the alleged debtor with "an opportunity to contest the liability." Iowa Code § 8A.504(2)(*f*)(1) (2017). That is the purpose of section 3-29. The problem,

as noted by the majority, is that the section itself forecloses challenges to ATE penalties "if the recipient of the notice failed to contest the notice pursuant to section 114-243(2)" or "[i]f a hearing or issuance of a civil citation is not timely requested pursuant to section 114-243(2) or pursuant to an administrative hearing available at the time the notice was issued." Des Moines, Iowa, Mun. Code § 3-29 (2017).

In short, the administrative procedure provided by the city in section 3-29 was illusory because it didn't give the individual who had not paid their ATE citation an opportunity to raise the city's failure to comply with the municipal infraction process. Section 3-29 prohibited the vehicle owner from raising the very thing that made their ATE citation invalid. This flaw was compounded by the notice that the city sent to Maury and Robbins which stated, "You have exhausted your legal remedies regarding the validity of this debt."

Finally, I agree that under these circumstances, Maury and Robbins may be able to pursue a remedy of unjust enrichment. *See Kragnes v. City of Des Moines*, 810 N.W.2d 492, 512 (Iowa 2012); Restatement (Third) of Restitution & Unjust Enrichment § 19(1), at 259 (Am. L. Inst. 2011). I might conclude otherwise if the section 3-29 administrative remedy were not illusory. In other words, if Maury and Robbins had a genuine opportunity to contest the offset on the ground that the ATE citation was not a valid debt, then failure to exhaust that administrative remedy might bar their claims. *See* Restatement (Third) of Restitution & Unjust Enrichment § 19(1), at 259 ("Except to the extent that a different rule is imposed by statute . . . ."); *id.* § 19(1) cmt. *g*, at 267 ("The taxing

authority may establish administrative procedures for refund claims, and state law may require their exhaustion as a precondition of a suit in restitution."). The city is required to conduct such hearings "in a manner substantially equivalent to that provided under Iowa Code chapter 17A," Iowa Admin. Code r. 11—40.4(6), and we have held that failure to exhaust an administrative remedy under chapter 17A is fatal to a plaintiff's claim, *Ghost Player, L.L.C. v. State*, 860 N.W.2d 323, 326 (Iowa 2015) ("When a party fails to exhaust all of its required administrative remedies, the court has no authority to hear the case . . . ."). However, "an administrative remedy should be adequate in order to be deemed exclusive." *Bass v. J.C. Penney Co.*, 880 N.W.2d 751, 760 (Iowa 2016).

With these observations, I join the court's opinion.